Record No. 25-1271

IN THE

# United States Court of Appeals

FOR THE FOURTH CIRCUIT

COLETTE CUNNINGHAM,

Plaintiff-Appellant,

v.

LOUDOUN COUNTY SHERIFF'S OFFICE, *et al*,

Defendants-Appelles.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA AT ALEXANDRIA

## OPENING BRIEF FOR APPELLANT COLETTE CUNNINGHAM

Thomas Kenneth Plofchan, Jr.
WESTLAKE LEGAL GROUP PLLC
46175 Westlake Drive, Suite 320
Potomac Falls, VA 20165
Tel: (703) 406-7616
tplofchan@westlakelegal.com

Counsel for Plaintiff-Appellant

# TABLE OF CONTENTS


**TABLE OF AUTHORITIES........................................................... ii**

**JURISDICTIONAL STATEMENT ...................................................1**

**STATEMENT OF ISSUES PRESENTED....................................1**

**STATEMENT OF THE CASE.............................................2**

**STATEMENT OF FACTS .............................................................3**

**SUMMARY OF THE ARGUMENT .........................................12**

**STANDARD ON SUMMARY JUDGMENT..............................14**

**ARGUMENT.......................................................................16**

**CONCLUSION..................................................................30**

**CERTIFICATE OF SERVICE.......................................................31**

# TABLE OF AUTHORITIES

## CASE LAW

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)............... 15, 16

*Bhattacharya v. Murray*, 93 F.4th 675, 686 (4th Cir. 2024) .................. 15

*Carter v. Fleming*, 879 F.3d 132, 139 (4th Cir. 2018)............................ 15

*George v. Leavitt*, 407 F.3d 405, 414, 366 U.S. App. D.C. 11 (D.C. Cir. 2005) ................................................................................... 26

*Haynes v. Waste Connections* 922 F.3d 219, 223-24 (4th Cir. 2019) ...... 28

*Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008).................................... 20

*Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 569 (4th Cir. 2015) ................................................................. 15, 16

*Laing v. Fed. Express Corp.*, 703 F.3d 713, 719-20 (4th Cir. 2013) . 27, 28

*Lewis v. City of Union City*, 918 F.3d 1213, 1218 (11th Cir. 2019)....... 27

*Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992) .................. 27

*Nguyen v. CNA Corp.*, 44 F.3d 234, 236 (4th Cir. 1995) ........................ 15

*PHP Healthcare Corp. v. EMSA Ltd. P'ship*, 14 F.3d 941, 944 n.3 (4th Cir. 1993) ........................................................................... 16

*Scott v. Harris*, 550 U.S. 372, 378-80 (2007)................................... 19, 20

*Simmons v. Whitaker*, 106 F.4th 379 (4th Cir. 2024) ............. 19, 20, 21, 22

*Spencer v. Va. State Univ.*, 919 F.3d 199, 207-08 (4th Cir. 2019).......... 27

*Tekmen v. Reliance Std. Life Ins. Co.*, 55 F.4th 951, 959 (4th Cir. 2022) ........ 16

*Tinsley v. City of Charlotte*, 854 Fed. Appx. 495 (4th Cir. 2021) ........ 27, 28, 29

*United States v. 8.929 Acres of Land in Arlington Cnty.*, 36 F.4th 240, 252 (4th Cir. 2022) ........ 15, 21

*White v. Golden Corral of Hampton, LLC*, 2014 U.S. Dist. LEXIS 33795 (E.D.V.A. 2014) ........ 25

*Witt v. W. Va. State Police, Troop 2*, 633 F.3d 272, 276 (4th Cir. 2011) ........ 19

**STATUTES**

42 U.S.C. § 2000e ........ 2

42 U.S.C. § 1983 ........ 2

Title VII of the Civil Rights Act of 1963 ........ 2, 27

**RULES**

Fed. R. Civ. P. 56 ........ 14, 15, 16

Fed. R. Civ. P. 58 ........ 1

Eastern District of Virginia Local Rule 56(b) .. 1, 12, 13, 22, 23, 24, 25, 26

## JURISDICTIONAL STATEMENT

Colette Cunningham ("Cunningham") appeals the Eastern District of Virginia, Alexandria Division's Order granting summary judgment to the Defendants, entering judgment in favor of Defendants pursuant to Fed. R. Civ. P. 58 and closing the civil action. This Order (JA563) is a final, appealable judgment pursuant to Federal Rule of Civil Procedure 54.

This Court has jurisdiction to hear this appeal pursuant to Federal Rule of Appellate Procedure 3, as it is an appeal of right from the district court.

## STATEMENT OF ISSUES

**I.** The District Court erred in failing to find that the inconsistent positions taken by Loudoun County Sheriff's Office regarding the existence of a Station Commander at Eastern Loudoun Station, and Cunningham's position that she was the Station Commander during the time period in question was a genuine dispute of material fact appropriate for a jury to decide.

**II.** The District Court erred in finding Cunningham did not comply with Eastern District of Virginia Local Rule 56 and subsequently erred in finding no genuine issues of material fact in dispute.

**III.** The District Court erred in finding no applicable comparators to Cunningham, and further erred in concluding that there was no evidence of similarly situated employees who were outside the protected class from whom Cunningham was treated differently.

## STATEMENT OF THE CASE

On November 29, 2023, Colette Cunningham filed a Complaint and subsequently an amended Complaint in the Eastern District of Virginia, Alexandria Division against the Loudoun County Sheriff's Office ("LCSO"), Sheriff Michael L. Chapman, Mark Poland, Eric Prugh, Kenneth Dondero, and Thomas Gilligan. (collectively, "Defendants" or LCSO) Cunningham alleged causes of action for, *inter alia*, discrimination and retaliation pursuant to 42 U.S.C. § 2000e, Denial of Equal Protection in Violation of 42 U.S.C. § 1983, Violation of Title VII of the Civil Rights Act of 1963**.** (JA012-JA046) Following Defendants' Motion to Dismiss, the District Court granted the Motion as to Cunningham's Counts II, III, IV, and V, and the case proceeded on Cunningham's § 2000e claim. (JA017)

The Parties then engaged in discovery, and the District Court entered an agreed Protective Order regarding the handling and labeling of confidential information (JA048-JA054) including but not limited to Cunningham's medical information and sensitive and salary information from LCSO. (JA494)

On January 2, 2025, the Defendants filed a Motion for Summary Judgment. (JA124-125) Cunningham filed her Opposition on January 17, 2025. (JA447-472) The Motion came before the District Court February 21, 2025. The District Court granted Defendants' Motion in its entirety, entered judgment in favor of the Defendants, and dismissed the case. (JA563) This appeal follows.

## STATEMENT OF FACTS

Colette Cunningham is a veteran law enforcement officer, spending 18 years of her career with LCSO. Cunningham held the rank of First Lieutenant at the time period in question, and Cunningham was the highest ranking female officer in the LCSO. (JA493) No women held the rank of Captain or higher. Cunningham is the victim of discrimination based on her sex in that she received disparate treatment in her employment from that received by other like qualified male employees of the LCSO. She has also suffered retaliation in the form of the denial of opportunity and disparate treatment as a result of her complaints against male officers.

In January 2020, Cunningham was promoted to First Lieutenant, one of only two women in that rank. (JA493) These two women were

the highest ranking women in the LCSO. Despite Cunningham's success in her jobs and her almost two decades of experience, she, like other women in equal ranks, were not given promotions, even though they had similar or superior qualifications to the men who received the promotions. Two senior officers, both white men, Captain David Hill and Major Chris Sawyer, were at the LCSO significantly less time than either Cunningham or the other female First Lieutenant and neither had the operational experience of Cunningham (narcotics, property crimes, robbery/homicide, etc.,); yet both were promoted to the rank of Captain without competitive process while Cunningham was not.

As First Lieutenant, Cunningham was assigned to assist Captain Thomas Gilligan, who was the Captain running the Eastern Loudoun Station. ("ELS") Gilligan had been the subject of previous complaints from women and minorities for bias and harassment on the job based on the complainant's gender and/or race.

From January 2020 until June 2020, Cunningham was subject to repeated acts of harassment by Gilligan, including his "warning" her that her subordinate was keeping a thick file on her.(JA494) After Cunningham properly documented this harassment and made several

complaints that she was being discriminated against based on her sex, Gilligan was removed from the Eastern Loudoun Station and placed at Headquarters. (JA494) However, in retaliation against Cunningham for bringing the complaints against Gilligan, while removing Gilligan from daily supervision of Cunningham, the Sheriff retained Gilligan as Cunningham's supervisor for purposes of writing her performance reviews. (JA494) This permitted Gilligan to write negative reviews about the person who exposed his discrimination, allowing Gilligan to negatively impact Cunningham's promotability. (JA495) Cunningham was compelled to complain about these reviews, which were eventually rescinded by the Sheriff. (JA495)

To document Gilligan's discrimination, Cunningham, as well as others, lodged formal complaints. (JA494) Cunningham emailed Major Kenneth Dondero on May 20, 2020 after enduring 3-4 months of harassment and bullying by Gilligan. Receiving no response, on June 4, 2020, Cunningham emailed the Sheriff and Colonel Mark Poland directly after being personally compelled to take 7 working days off in order to remove herself from the toxic environment of working with Captain Gilligan. (JA494)

Captain Gilligan was moved from the station in June 2020 due to Cunningham's complaint. When Gilligan was removed from command of the Eastern Loudoun Station, the responsibility for running the station fell to Cunningham. (JA495) In response to Cunningham's EEOC complaint, the Sheriff asserted that "from June 15, 2020 until March 4, 2021, the Eastern Loudoun Station was without a Station Commander." This intentional statement misstates reality and was designed to cover up the Sheriff's discrimination against Cunningham, in that Cunningham was serving in the role of Station Commander.

Each station has a Station Commander, which is *usually* held by a Captain, and an Assistant Station Commander, which is *usually* held by a First Lieutenant. (JA492) At all relevant times, the Station Commanders for the three non-ELS stations were Ahlemann, Hibberd, and De Litta, who are all male. (JA492) Cunningham, from June 2020 through March 2021 was the Station Commander for the ELS, the largest of all Loudoun County's stations. All Station Commanders reported to Maj. Kenneth Dondero. (JA492) All stations were required to be run to the same standard. Assistant Station Commanders are expected to be able to perform the duties of assisting the Station

Commander and to temporarily stand in place of the Station Commander when the Station Commander is unavailable. (JA492)

The First Lieutenant *acting in the role of* Assistant Station Commander is a demanding position because it involves being a duty officer. (JA493) At the time Cunningham was promoted to First Lieutenant, she was assigned *to be the Assistant Station Commander at* the ELS and was a duty officer. (JA493) During the period of June 2020 to March 2021, when Cunningham was running ELS on her own, no male Station Commander was required to perform 2 jobs (Station Commander AND Assistant Station Commander) or assume the tasks of the Assistant Station Commander. Each other station had administrative support while the ELS, run by Cunningham, did not. (JA493) None of the male Station Commanders were required to work overtime or work as a duty officer and all had a Monday through Friday work schedule. (JA493) Cunningham was required to work overtime, work as a duty officer, and was denied a Monday through Friday schedule.

Previously, for other male officers who were placed in a position above their current rank, the officers were given the title of "Acting" and eventually promoted. (JA493) Cunningham, the only woman to run a

station for the LCSO, did so for nine months. While performing this Captain's job, she was neither given the title of "Acting" or was promoted. No men performed responsibilities of a senior position for 9 months without being given the title of "Acting" or being promoted. (JA493)

During the period of June 2020 to March 2021, the First Lieutenants of the other stations were Buckman (male) (WLS), Earley (male) (Dulles Station), and Holway (female) (Ashburn). (JA494) In July 2020, Holway went on medical leave and was eventually replaced by Paul Loconti (male).

When Gilligan was removed from command of the Eastern Loudoun Station, the full time responsibility for running the station fell to Cunningham. This responsibility was significantly greater than a temporary coverage usually performed by an Assistant Station Commander in the temporary absence of a Station Commander. LCSO has never asserted that Cunningham was merely underfilling as Station Commander. (JA495)

From June 15, 2020 through March 4, 2021, the ELS was short staffed because no one replaced the Assistant Station Commander position while Cunningham was fulfilling the role of the Station

Commander and no other stations provided any manpower assistance to the ELS during this time. (JA495-JA496) Despite Cunningham fulfilling the role of Station Commander, she was not made "Acting Station Commander". ELYS had no other Station Commander, and Cunningham was not compensated as a Station Commander. Further, Cunningham was not relieved of the duty officer requirement held by the Assistant Station Commanders. (JA496)

Cunningham asked Major Dondero to remove her from duty officer rotation and these requests were denied. (JA496) Cunningham's base pay wages (excluding for the overtime she was forced to work for the duty officer shifts) was lower than the other Station Commanders. The other Station Commanders were compensated at a higher rate and were not required to work overtime. (JA496)

As Cunningham's case progressed, LCSO has taken several positions regarding Gilligan. In Paragraph 8 of the Position Statement filed by the Sheriff with the EEOC for charge 570-2020-02001, the Sheriff asserted that "from June 15, 2020 until March 4, 2021, the Eastern Loudoun Station was without a Station Commander." In the Position Statement filed by the Sheriff of the Loudoun County for charge 570-

2022-00950, the Sheriff asserted "they transferred the Station's Captain and one sergeant to other stations" and "once Captain Gilligan was transferred out of ELS, Cunningham ran the station in the absence of the Captain" and "as soon as the Sheriff was informed that Cunningham felt that Gilligan was causing issues for her he moved Gilligan out of ELS" and "he supported Cunningham by ordering that Gilligan be transferred so that she did not have to work with him." (JA498-JA503)

Despite these statements, in the Memorandum in Support of the Motion for Summary Judgment, the LCSO asserted that Gilligan remained as station commander and "provided oversight" to the ELS. (JA132)

At the hearing on Defendants' Motion for Summary Judgment, Cunningham highlighted that the issue of Gilligan and his position and/or role was clearly a disputed issue of fact based on LCSO's own filings, affidavits, and discovery responses, and that it creates an issue for a jury to decide whether the LCSO should be bound by what it asserted previously. (JA574-577) The District Court found no genuine issue of material fact and granted summary judgment to LCSO.

An additional issue of disputed fact discussed at the hearing was

the parties' position on appropriate comparators for Cunningham, with LCSO arguing that the comparators should be first lieutenants, and Cunningham arguing the comparators should be other station commanders (captains) because the comparison is with the job, not with the rank. Cunningham was operating as a station commander. (JA578)

The District Court, ruling from the bench and without issuing a Memorandum Opinion, found that there was no evidence of similarly-situated employees outside the protected class who were treated differently, and found that neither the first lieutenants nor the station commanders who were captains were appropriate comparators. (JA586) The District Court did not opine on who would be appropriate comparators. The District Court didn't further explain its ruling.

The District Court further found that Cunningham's pay and that of the others was "quite similar," but that the record was unclear as to how the pay broke down when considering overtime for the purported comparators. *Id.* If the Record was unclear, that would be a reason to deny summary judgment because it would be a disputed fact for the jury.

The District Court also stated that Cunningham did not present her opposition to the Motion for Summary Judgment in conformity with

Local Rule 56, and took that into account when attempting to determine whether there were any genuine issues of material facts in dispute. *Id.* However, the District Court did not further explain this ruling or identify how Cunningham's opposition was not in conformity with the Rule. Cunningham can find no language in Local Rule 56 that identifies a format for responding to a summary judgment motion. The District Court granted LCSO's motion for summary judgment in its entirety, and dismissed Cunningham's case. This appeal follows.

## SUMMARY OF THE ARGUMENT

The District Court erred in relying on affidavits submitted by Dondero and Poland, the substance of which was that Gilligan was still in his position (as station commander, even though he was removed to central office) when both Cunningham and LCSO had previously said otherwise. The District Court erred in adopting LCSO's position regarding the status of command at ELS when then matter was clearly in dispute by Cunningham, and the position taken by LCSO appeared fluid. Cunningham, not LCSO, is entitled to all factual inferences in her favor as the non-moving party at summary judgment. Cunningham's account of the facts relating to her tenure as Commander at ELS present

genuine issues of material fact that must be resolved at trial. The District Court erred in short-circuiting the litigation and granting summary judgment to LCSO.

The District Court erred in its application of Local Rule 56, and in doing so, removed the genuine issues of material fact highlighted by Cunningham from consideration by a trier of fact. There was no basis for the District Court to conclude that Cunningham failed to adhere to Local Rule 56. To the extent the District Court's preference was for Cunningham to admit or deny each numbered paragraph in Defendants' motion, such a stringent requirement is not contemplated under the Rule. Cunningham's articulation of multiple disputed facts is in substantial compliance with the Rule, and the District Court erred in declaring Cunningham's opposition not in conformity with Local Rule 56. The District Court's reliance on its preference for numbered admissions/denials elevates form over substance. Cunningham complied with Local Rule 56(b). As there is a genuine dispute as to material facts, the District Court's granting of summary judgment was in error and must be reversed.

The District Court erred in finding at the summary judgment stage that Cunningham, as a 1st Lieutenant occupying the Station Commander position, had not identified an appropriate comparator. A question of who is an appropriate comparator is normally a question for the trier of fact. Cunningham stated a sufficient basis for comparison to submit the question to the fact-finder, and the District Court erred in granting summary judgment in favor of LCSO. Cunningham and the other station commanders were "engaged in the same conduct"—that is, the leadership and operation of a station of the Loudoun County Sheriff's Office. The District Court erred in finding that neither the first lieutenants nor the station commanders who were captains were appropriate comparators. Cunningham has presented a disputed issue of fact determinable by the trier of fact, and the District Court erred in short-circuiting the litigation.

**STANDARD ON SUMMARY JUDGMENT**

The well-established, traditional summary judgment standard provides that a party is entitled to summary judgment when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a

motion for summary judgment, the court construes "all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party." *United States v. 8.929 Acres of Land in Arlington Cnty.*, 36 F.4th 240, 252 (4th Cir. 2022) (quoting *Carter v. Fleming*, 879 F.3d 132, 139 (4th Cir. 2018)). Stated succinctly, summary judgment is appropriate when the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)

To survive summary judgment, a nonmovant must show that there is a genuine dispute of material fact. "A dispute is genuine if the evidence presented would allow a reasonable factfinder to find for the nonmovant." *Bhattacharya v. Murray*, 93 F.4th 675, 686 (4th Cir. 2024) The nonmovant must "cit[e] to particular parts of materials in the record, including . . . affidavits." Fed. R. Civ. P. 56(c)(1)(A). To decide whether a genuine issue exists, "a court must view all facts, and reasonable inferences taken therefrom, in the light most favorable to the nonmoving party." *Bhattacharya*, 93 F.4th at 686

Ordinarily in the summary judgment context, the court "cannot weigh the evidence or make credibility determinations." *Jacobs v. N.C.*

*Admin. Off. of the Cts.*, 780 F.3d 562, 569 (4th Cir. 2015). Indeed, the Supreme Court has made clear that "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

Although a judge may address facts when ruling on a motion for summary judgment, "[b]y definition, no findings of material facts that were 'in genuine issue' are possible in granting summary judgment." *PHP Healthcare Corp. v. EMSA Ltd. P'ship*, 14 F.3d 941, 944 n.3 (4th Cir. 1993). This is so because, if material facts were in genuine dispute, summary judgment would not be warranted. Fed. R. Civ. P. 56(a); *Tekmen v. Reliance Std. Life Ins. Co.*, 55 F.4th 951, 959 (4th Cir. 2022)

A Circuit Court reviews a district court's grant of a motion for summary judgment *de novo*, applying the same legal standards as the district court. *Nguyen v. CNA Corp.*, 44 F.3d 234, 236 (4th Cir. 1995).

## ARGUMENT

**I. The District Court erred in failing to find that the inconsistent positions taken by Loudoun County Sheriff's Office regarding the existence of a Station Commander at Eastern Loudoun Station, and Cunningham's position that she was the Station Commander during the time period in**

**question was a genuine dispute of material fact appropriate for a jury to decide.**

By their own affidavits and prior position statements, the Defendants have taken inconsistent positions with regard to the existence of a station commander at ELS. That, in and of itself, creates an issue of material fact that must be determined by the trier of fact. The District Court erred in relying on affidavits submitted by Dondero (JA171-JA187) and Poland (JA154-JA159), the substance of which was that Gilligan was still in his position (as station commander, even though he was removed to headquarters) when both Cunningham and LCSO had previously said otherwise. LCSO changed its position on summary judgment-- LCSO asserted that Gilligan remained as the ELS commander, when previously, the Sheriff, in responses to the EEOC, claimed that the station had no commander. (JA498-JA550) There are factual issues in dispute material to Cunningham's claim that entitle her to a decision by the trier of fact. The District Court erred in granting summary judgment to LCSO.

When Gilligan was removed from command of the Eastern Loudoun Station, the full time responsibility for running the station fell to Cunningham, a responsibility much greater than temporary

coverage usually performed by an Assistant Station Commander. The LCSO has taken several positions regarding Gilligan. In Paragraph 8 of the Position Statement filed by the Sheriff with the EEOC for charge 570-2020-02001, the Sheriff asserted that "from June 15, 2020 until March 4, 2021, <u>the Eastern Loudoun Station was without a Station Commander."</u> (JA504-JA505) In the Position Statement filed by the Sheriff of the Loudoun County for charge 570-2022-00950, the Sheriff asserted "they transferred the Station's Captain and one sergeant to other stations" and "once Captain Gilligan was transferred out of ELS, Cunningham ran the station in the absence of the Captain" and "as soon as the Sheriff was informed that Cunningham felt that Gilligan was causing issues for her he moved Gilligan out of ELS" and "he supported Cunningham by ordering that Gilligan be transferred so that she did not have to work with him." (JA498-JA503) In support of summary judgment, LCSO asserted that Gilligan remained as station commander and "provided oversight" to the ELS. (JA132)

Cunningham, in her affidavit, asserted that beginning on June 15, 2020, Gilligan was assigned to a position at Headquarters and did not function as the Station Commander though he still wrote

Cunningham's annual performance review (JA495), and that LCSO has never asserted that Cunningham was merely underfilling as Station Commander. (JA495) Cunningham's assertion that she was functioning as the Station Commander, coupled with LCSO's changing accounts of the status of ELS command, constitute disputed facts that must preclude a finding of summary judgment. The District Court erred in granting summary judgment to LCSO.

This Court recently reversed a district court's granting of summary judgment in *Simmons v. Whitaker*, 106 F.4th 379 (4th Cir. 2024). In *Simmons*, a § 1983 action, the Fourth Circuit held that the district court improperly determined the relevant facts by crediting the video footage and the officers' affidavits over Simmons's version of events, and reversed the finding of summary judgment. Discussing video evidence, this Court re-iterated the standard that "[W]hen a video 'quite clearly contradicts the version of the story told by [the plaintiff] . . . so that no reasonable jury could believe it, a court should not adopt that version of the facts for the purposes of ruling on a motion for summary judgment.'" *Witt v. W. Va. State Police, Troop 2*, 633 F.3d 272, 276 (4th Cir. 2011) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007))

Thus, at the summary judgment stage, video evidence can only discredit a nonmovant's factual assertions if the video "blatantly" contradicts the nonmovant's position. *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008)

In *Simmons*, the Fourth Circuit discussed the district court's rejection of Simmons's account based on the existence of the video evidence but the district court did not decide whether the videotape "blatantly" or "clearly" contradicted Simmons's account, as required. The Fourth Circuit found in *Simmons* that even an unchallenged video must be taken in the light most favorable to Simmons at summary judgment if it does not blatantly contradict his account of the facts. See *Scott v. Harris*, 550 U.S. 372, 378-80 (2007) (affirming that video evidence trumps a nonmovant's factual account at summary judgment *only when* "[t]he videotape quite clearly contradicts" the nonmovant's version, *and when* a party's story is "blatantly contradicted by the record," such that "no reasonable jury could believe" the nonmovant's version in light of the video evidence (emphasis added)).

The Fourth Circuit went on to state that the point in *Simmons* is that the video footage does not blatantly establish factual circumstances

contrary to Simmons's account. Thus, the district court erred when it distorted traditional summary judgment standards and adopted the officers' factual position.

Like in *Simmons*, even though this does not involve a video, the District Court in Cunningham’s case erred in adopting LCSO’s position regarding the status of command at ELS and giving credit to the affidavit of Dondero and Poland over that of Cunningham. The matter was clearly in dispute by Cunningham, and the position taken by LCSO appeared fluid. Cunningham, not LCSO, is entitled to all factual inferences in her favor as the non-moving party at summary judgment. *United States v. 8.929 Acres of Land in Arlington Cnty.*, 36 F.4th 240, 252 (4th Cir. 2022)

Cunningham’s affidavit regarding the status of command should have been accorded great weight as the non-moving party. Further in *Simmons*, this Court found that the district court improperly ignored material admissible evidence in Simmons's affidavit. For example, the district court adopted the officers' view that Simmons kicked and flailed, defying the officers' commands to stop, J.A. 324, and ignored Simmons's position that he "did not resist," J.A. 62. The district court again adopted the officers' account that "Hull and Brown did not observe Officer

Whitaker choke plaintiff," J.A. 325, and ignored Simmons's affidavit that stated the other officers "stood and watched" Whitaker choke him, and "no one tried to stop him or say anything," J.A. 62-63.

This Court stated, "… the district court again distorted traditional summary judgment standards. *It is axiomatic that a court must credit the nonmovant's account of the facts at summary judgment.* The district court breached this longstanding principle, and its order must be reversed." *Simmons*, 106 F.4th at 386-387 (emphasis added) Cunningham's account of the facts relating to her tenure as Commander at ELS present genuine issues of material fact that must be resolved at trial. The District Court erred in short-circuiting the litigation and granting summary judgment to LCSO. Its Order should be reversed.

**II. The District Court erred in finding Cunningham did not comply with Eastern District of Virginia Local Rule 56 and subsequently erred in finding no genuine issues of material fact in dispute.**

The District Court erred in its application of Local Rule 56, and in doing so, removed the genuine issues of material fact highlighted by Cunningham from consideration by a trier of fact. When opining on Defendants' Motion for Summary Judgment from the bench, the District Court stated

> And I would note, some of the briefing addressed the issue of the process of identifying undisputed facts. Local Rule 56 sets out a clear method for the moving party to identify those facts, and requires the opposing party—in this case, the plaintiff—to clearly address and either agree with or dispute those facts. That was not done here. It simply was not done in conformity with Local Rule 56, **<u>and the Court takes that into account</u>**, although the Court has looked very carefully and tried and endeavored to look at the record itself and determine whether there are any genuine issues of material fact in dispute.

(JA584-JA585) (emphasis added)

Eastern District of Virginia Local Rule 56(b) governs the briefing requirements for summary judgment motions and responses:

> **(B) Summary Judgment—Listing Of Undisputed Facts:** Each brief in support of a motion for summary judgment shall include a specifically captioned section listing all material facts as to which the moving party contends there is no genuine issue and citing the parts of the record relied on to support the listed facts as alleged to be undisputed. **<u>A brief in response to such motion shall include a specifically captioned section listing all material facts as to which it is contended that there exists a genuine issued necessary to be litigated and citing parts of the record relied on to support the facts alleged to be in dispute.</u>** In determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its listing of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion.

E.D.V.A. Local Rule 56 (emphasis added)

On January 17, 2025, Cunningham filed her Opposition to Defendants' Motion for Summary Judgment. (JA447-JA472) She specifically writes,

> **RESPONSE TO THE MOTION FOR SUMMARY JUDGMENT**
>
> STATEMENT OF GENUINE MATERIAL FACTS NOT CITED BY DEFENDANT OR OTHERWISE IN DISPUTE, PER LOCAL R. 56(B)
>
> Each fact asserted in the affidavits of Mark Poland, Kenneth Dondero, Chandra Evans, Elissa Wilk, Elaine Crawford are contested to the extent the facts are not disclosed in Defendants initial disclosures.

(JA458)

Cunningham next proceeded to identify and list 32 paragraphs of what she contends are disputed facts, and cites to various portions of the record. (JA458-JA465) There is no basis for the District Court to conclude that Cunningham failed to adhere to Local Rule 56. To the extent the District Court's preference was for Cunningham to admit or deny each numbered paragraph in *Defendants'* motion, such a stringent requirement is not contemplated under the Rule. Cunningham's articulation of multiple disputed facts is in total compliance with the Rule, and the District Court erred in declaring Cunningham's opposition out of conformity with Local Rule 56, and ***taking that into***

***account*** in subsequently granting summary judgment.

In *White v. Golden Corral of Hampton, LLC*, 2014 U.S. Dist. LEXIS 33795 (E.D.V.A. 2014), the Defendant alleged Plaintiff's non-compliance with Local Rule 56(B). In denying Defendant's summary judgment motion, the District Court stated,

> Defendant insists that Plaintiff elected to ignore Local Rule 56(B) and her obligation to provide a listing of undisputed material facts in support of her Opposition to the Amended Motion for Summary Judgment.
>
> The Court recognizes that Plaintiff failed to strictly comply with Local Rule 56(B). However, this failure to comply does not preclude a finding that summary judgment is inappropriate. The Court finds that Plaintiff has identified several disputed issues of material fact throughout her Opposition to the Amended Motion for Summary Judgment, albeit not in a captioned section and listing…
>
> Although Local Rule 56(B) requires compliance with its instruction regarding the proper filing of a response to a summary judgment motion, **<u>the Court will not elevate form over substance</u>**. Because Plaintiff identified genuine issues of material facts that remain in dispute, Defendant's Amended Motion for Summary Judgment as to the disability discrimination claim is DENIED.

*Id*. at *9-11.

Cunningham's Opposition conforms with the local rule, as it sets out, in a captioned section disputed facts, including citations to various portions of the record. The District Court erred in requiring a certain

presentation of disputed facts not contemplated under the local rule. The District Court's reliance on its preference for number admissions/denials indeed elevates form over substance. Further, when Defendants complained in their Reply that Cunningham did not answer their allegations numerically, Cunningham proposed a sur-reply conform her responses to Defendants' format, and the District Court denied Cunningham's request. (JA562) Cunningham complied with Local Rule 56(b). As there is a genuine dispute as to material facts, the District Court's granting of summary judgment was in error and must be reversed.

### III. The District Court erred in finding no applicable comparators to Cunningham, and further erred in concluding that there was no evidence of similarly situated employees who were outside the protected class from whom Cunningham was treated differently.

The District Court erred in finding at the summary judgment stage that Cunningham, as a 1st Lieutenant occupying the Station Commander position, had not identified an appropriate comparator. Such finding is in error. A question of who is an appropriate comparator is normally a question for the trier of fact. *George v. Leavitt*, 407 F.3d 405, 414, 366 U.S. App. D.C. 11 (D.C. Cir. 2005) (noting that whether comparators are

similarly situated is typically a fact question). Cunningham submitted a sufficient basis for comparison to submit the question to the fact-finder, and the District Court erred in granting summary judgment to LCSO.

To demonstrate causation in a Title VII sex discrimination case, a plaintiff may present a similarly-situated comparator who is not a member of the plaintiff's protected class. *Laing v. Fed. Express Corp.*, 703 F.3d 713, 719-20 (4th Cir. 2013).

For example, a male plaintiff alleging sex discrimination under Title VII, as a matter of law, must show that he and his female comparator are similarly situated in all material respects. *Spencer v. Va. State Univ.*, 919 F.3d 199, 207-08 (4th Cir. 2019) (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)); *Lewis v. City of Union City*, 918 F.3d 1213, 1218 (11th Cir. 2019) (explaining that comparators must be similarly situated in all material respects to allow for a meaningful comparison).

The requirement that a plaintiff and her comparator[s] be similarly situated promotes the goals of Title VII by helping to identify discrimination. "[T]he very term 'discrimination' invokes the notion of treating two persons differently on the basis of a certain characteristic that only one possesses." *Tinsley v. City of Charlotte*, 854 Fed. Appx. 495

(4th Cir. 2021) citing *Laing*, 703 F.3d at 719. The Fourth Circuit has found that comparator evidence is "particularly probative" in determining whether an adverse employment action was the result of discrimination, because such evidence allows the **fact finder** to make an objective inquiry and to control for other explanations for termination. *Laing*, at 719-20 (emphasis added)

In Cunningham's case, the District Court stated,

> With regard to disparate treatment, there's no dispute that the plaintiff is a member of a protected class, nor is there really a dispute about whether she performed, in a satisfactory fashion, her job, but there simply is no evidence of similarly situated employees who were outside the protected class who were treated differently…For comparators to be appropriate, they have to be similar in all relevant ways, and in this case, neither the first lieutenants nor the station commanders who were captains are appropriate comparators.

(JA586)

It is a disputed question of fact as to who the appropriate comparators are in this case. As stated in *Haynes v. Waste Connections*, a plaintiff can demonstrate that he is similarly situated with a comparator by showing that they both (1) "dealt with the same supervisor," and (2) were "subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating

circumstances that would distinguish their conduct or the employer's treatment of them for it." 922 F.3d 219, 223-24 (4th Cir. 2019). A comparator's conduct **does not** need to be identical to the plaintiff's. *Id.* (emphasis added) Cunningham, as the acting ELS commander, was subject to the same standards as the other, male, station commanders, and all station commanders took orders from Major Dondero. No comparator was required to perform two jobs, being both the Station Commander and having to perform the job of the Assistant Station Commander. The comparators each had administrative support not provided to Cunningham. None of the comparators were required to work overtime. None of the comparators were required to perform additional work as a duty officer. All of the comparators were paid a higher base salary. All of the comparators were given a Monday through Friday work schedule while serving as a station commander.

In *Tinsley v. City of Charlotte*, 854 Fed. Appx. 495 (4th Cir. 2021) this Court found that officers Tinsely and Aquino were not similarly situated because they were not engaged in the same conduct simply because they were both involved in the Internal Affairs investigation of a rape allegation. Tinsley and Aquino were not investigated by Internal

Affairs for the same misconduct, with Aquino being the alleged victim and not under investigation at all. *Id.*

Conversely, Cunningham and the other station commanders were "engaged in the same conduct"—that is, the leadership and operation of a station of the Loudoun County Sheriff's Office. The District Court erred in finding that neither the first lieutenants nor the station commanders who were captains were appropriate comparators. Cunningham has presented a disputed issue of fact determinable by the trier of fact, and the District Court erred in short-circuiting the litigation.

## CONCLUSION

WHEREFORE the Appellant, COLETTE CUNNINGHAM, respectfully requests this Court REVERSE the Eastern District of Virginia's Order granting Defendants' Motion for Summary Judgment, and any other relief that this Court deems just and fair.

Respectfully Submitted,
COLETTE CUNNINGHAM
By Counsel

WESTLAKE LEGAL GROUP

/s/ Thomas K. Plofchan, Jr.
Thomas K. Plofchan, Jr., VSB No. 34536
46175 Westlake Drive, Suite 320
Potomac Falls, Virginia 20165
(703) 406-7616 – Telephone
(703) 444-9498 – Facsimile
tplofchan@westlakelegal.com
*Counsel for Plaintiff/Appellant*

## REQUEST FOR ORAL ARGUMENT

Appellant desires to state, in person, the reasons her appeal should be granted.

## CERTIFICATE OF SERVICE

I certify that on this 1st day of August, 2025 I served a copy of the foregoing Brief of Appellant upon the following via the CM/ECF system to:

Alexander Francuzenko, VSB# 36510
Cook Craig & Francuzenko, PLLC
3050 Chain Bridge Road, Suite 200
Fairfax, VA 22030
(703) 865-7480 – Telephone
(703) 434-3510 – Facsimile
Email: alex@cookcraig.com
*Counsel for Defendants/Appellees*

/s/ Thomas K. Plofchan, Jr.
Thomas K. Plofchan, Jr.

**UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT**

**No.** 25-1271 **Caption:** Colette Cunningham v. Loudoun County Sheriif's Office

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**

Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

**Type-Volume Limit for Briefs if Produced Using a Computer:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 15,300 words or 1,500 lines. A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type. See Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

**Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words. Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2) & 40(d)(3).

**Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6). Sans-serif type, such as Arial, may not be used except in captions and headings.

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

- [✓] this brief or other document contains 5914 [*state number of*] words
- [ ] this brief uses monospaced type and contains ______ [*state number of*] lines

This brief or other document complies with the typeface and type style requirements because:

- [✓] this brief or other document has been prepared in a proportionally spaced typeface using Microsoft Word [*identify word processing program*] in 14, Century Schoolbook [*identify font, size, and type style*];

**or**

- [ ] this brief or other document has been prepared in a monospaced typeface using ______ [*identify word processing program*] in ______ [*identify font, size, and type style*].

**NOTE: The Court's preferred typefaces are Times New Roman, Century Schoolbook, and Georgia. The Court discourages the use of Garamond.**

(s) Thomas K. Plofchan, Jr.

Party Name Colette Cunningham Date: 8/1/2025