**No. 25-1271**

# United States Court of Appeals
*for the*
# Fourth Circuit

COLETTE CUNNINGHAM,

*Plaintiff-Appellant*,

– v. –

LOUDOUN COUNTY SHERIFF'S OFFICE;
MICHAEL L. CHAPMAN, Individually and Officially as Sheriff;
MARK POLAND, Individually and Officially; ERIC PRUGH, Individually and Officially; KENNETH DONDERO, Individually and Officially;
THOMAS GILLIGAN, Individually and Officially,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA AT ALEXANDRIA

# RESPONSE BRIEF OF APPELLEES

Alexander Francuzenko
Philip C. Krone
COOK CRAIG & FRANCUZENKO, PLLC
3050 Chain Bridge Road, Suite 200
Fairfax, Virginia 22030
(703) 865-7480

*Counsel for Appellees*

COUNSEL PRESS (800) 4-APPEAL • [813669]

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 25-1271 Caption: Colette Cunningham v. Loudoun County Sheriff's Office, et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Loudoun County Sheriff's Office, Mike L. Chapman, Mark Poland, Eric Pruch, Kenneith Dondero, and
(name of party/amicus)

Thomas Gilligan

who is Appellee, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity? ☐YES ☑NO

2. Does party/amicus have any parent corporations? ☐YES ☑NO
If yes, identify all parent corporations, including all generations of parent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐YES ☑NO
If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? ☐YES ☑NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7. Is this a criminal case in which there was an organizational victim? ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: ______________________ Date: March 28, 2025

Counsel for: Loudoun Cnty Sheriff's Office, et al.



Print to PDF for Filing

# TABLE OF CONTENTS

**Page**


TABLE OF AUTHORITIES ..... ii

JURISDICTIONAL STATEMENT ..... 1

STATEMENT OF THE ISSUES ..... 1

STATEMENT OF THE CASE ..... 2

SUMMARY OF ARGUMENT ..... 7

STANDARD OF REVIEW ..... 11

ARGUMENT ..... 12

I. Title VII standards ..... 12

II. The district court correctly determined, and the record demonstrates, that there was no genuine dispute of a material fact regarding the status of the station commander position at the Eastern Loudoun Station ..... 15

A. The LCSO did not take inconsistent positions in its EEOC Position Statement and its summary judgment statement of undisputed material facts ..... 19

B. Even if there was a disputed fact as to this particular issue, Ms. Cunningham's Title VII claims still fail as a matter of law ..... 22

III. The district court's application of the Eastern District of Virginia's Local Rule 56 did not alter or violate the application of summary judgment standards for determining whether there were genuine issues of material facts in dispute ..... 24

IV. The district court correctly determined that Ms. Cunningham failed to show applicable comparators in order for her Title VII discrimination and pay disparity claims to survive summary judgment ..... 27

CONCLUSION ..... 31

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ........ 12

*Bio v. Fed. Express Corp.*,
424 F.3d 593 (7th Cir. 2005) ........ 14, 27

*Bostic v. Schaefer*,
760 F.3d 352 (4th Cir. 2014) ........ 11

*Briggs v. Waters*,
455 F. Supp. 2d 508 (E.D. Va. 2006) ........ 6

*Brinkley-Obu v. Hughes Training, Inc.*,
36 F.3d 336 (4th Cir. 1994) ........ 13

*Brown v. Serenity C & C, Inc.*,
391 F. Supp. 3d 546 (E.D. Va. 2019) ........ 25

*Coleman v. Md. Ct. of Appeals*,
626 F.3d 187 (4th Cir. 2010) ........ 12

*Cosby v. S.C. Prob., Parole & Pardon Servs.*,
93 F.4th 707 (4th Cir. 2024) ........ 12, 13

*Foster v. Univ. of Maryland-E. Shore*,
787 F.3d 243 (4th Cir. 2015) ........ 14

*Guessous v. Fairview Prop. Investments, LLC*,
828 F.3d 208 (4th Cir. 2016) ........ 29

*Hawkins v. PepsiCo, Inc.*,
203 F.3d 274 (4th Cir. 2000) ........ 15

*Haynes v. Waste Connections, Inc.*,
922 F.3d 219 (4th Cir. 2019) ........ 13, 28

*Henry v. Purnell*,
652 F.3d 524 (4th Cir. 2011) ........ 11

*Herster v. Bd. of Supervisors of Louisiana State Univ.*,
887 F.3d 177 (5th Cir. 2018) ........ 14, 27

*Hodgin v. UTC Fire & Sec. Americas Corp.*,
885 F.3d 243 (4th Cir. 2018)........................................................................26

*Jackson v. Kimel*,
992 F.2d 1318 (4th Cir. 1993)......................................................................12

*JDS Uniphase Corp. v. Jennings*,
473 F. Supp. 2d 705 (E.D. Va. 2007)............................................................25

*Libertarian Party of Va. v. Judd*,
718 F.3d 308 ..............................................................................................11, 12

*Lightner v. City of Wilmington*,
545 F.3d 260 (4th Cir. 2008)........................................................................13

*McIver v. Bridgestone Americas, Inc.*,
42 F.4th 398 (4th Cir. 2022) ........................................................................15

*Med. Waste Assocs. Ltd. v. Mayor & City Council of Baltimore*,
966 F.2d 148 (4th Cir. 1992)........................................................................11

*Mitchell v. Toledo Hosp.*,
964 F.2d 577 (6th Cir. 1992)........................................................................13

*Netter v. Barnes*,
908 F.3d 932 (4th Cir. 2018)........................................................................14

*Noonan v. Consol. Shoe Co., Inc.*,
84 F.4th 566 (4th Cir. 2023) ........................................................................14

*Reynolds v. Am. Nat. Red Cross*,
701 F.3d 143 (4th Cir. 2012)........................................................................11

*Service & Training, Inc. v. Data Gen. Corp.*,
963 F.2d 680 (4th Cir. 1992)........................................................................12

*Spencer v. Va. State Univ.*,
919 F.3d 199 (4th Cir. 2019), *as amended* (Mar. 26, 2019) ......................... *passim*

*White v. Golden Corral of Hampton, LLC*,
2014 U.S. Dist. LEXIS 33795 (E.D.Va. 2014)..................................................24

**Statutes & Other Authorities:**

28 U.S.C. § 1291 ....................1

28 U.S.C. § 1331 ....................1

42 U.S.C. § 1983 ....................1, 5

42 U.S.C. § 2000e ....................5

Civil Rights Act of 1963 (“Title VII”).................... *passim*

Fed. R. Civ. P. 56(a) ....................11

Eastern District of Virginia’s Local Rule 56 .................... 1, 9, 24, 25

Local R. of Civ. P. 56(B) ....................24

## JURISDICTIONAL STATEMENT

Appellant-Plaintiff, Colette Cunningham, originally filed this action in the United States District Court for the Eastern District of Virginia on or about November 29, 2023, and later amended her complaint on February 22, 2024. (JA002). The district court had jurisdiction under 28 U.S.C. § 1331 as the complaint alleged equal protection violations under 42 U.S.C. § 1983 and violations of Title VII of the Civil Rights Act of 1963 ("Title VII"). Judge Michael S. Nachmanoff presided over the case. On February 21, 2025, the district court granted the Loudoun County Sheriff's Office's motion for summary judgment. (JA563). On March 20, 2025, Ms. Cunningham noticed her appeal of the February 21, 2025 Order. (JA564). This Court has jurisdiction pursuant to 28 U.S.C. § 1291, as the district court's order was a final order.

## STATEMENT OF THE ISSUES

**Issue 1.** Whether the district court correctly determined that there was no genuine dispute of material fact regarding the status of the station commander position at the Eastern Loudoun Station.

**Issue 2**. Whether the district court correctly applied the summary judgment standards under the Eastern District of Virginia's Local Rule 56 and correctly determined that there was no genuine dispute of material facts.

**Issue 3**. Whether the district court correctly determined that Ms. Cunningham failed to show appropriate comparators in order for her Title VII discrimination and pay disparity claims to survive summary judgment.

## STATEMENT OF THE CASE

At all relevant times, Ms. Cunningham was a sworn deputy of the Loudoun County Sheriff holding the rank of first lieutenant. From 2019 through 2021, the Loudoun County Sheriff's Office (the "LCSO") operated with the following ranks under the sheriff: undersheriff, lieutenant colonel, major, captain, first lieutenant, second lieutenant, sergeant, deputy first class, and deputy. (JA154). As it relates to the operations division of the LCSO, the county is divided into four stations: Dulles Station, Ashburn Station, Eastern Loudoun Station ("ELS"), and Western Loudoun Station ("WLS"). (JA154). Each station has a station commander, which is occupied by a captain, and an assistant station commander, which is occupied by a first lieutenant. (JA155). First lieutenants in the role of assistant station commanders are expected to be able to perform the duties of the captain and perform the duties of station commander at any time or when needed. (JA155).

As a first lieutenant at the ELS, Ms. Cunningham was the assistant station commander. (JA156). The station commander at the ELS was Captain Thomas Gilligan. (JA156). Ms. Cunningham and Captain Gilligan did not get along and management issues with one of Ms. Cunningham's subordinates exacerbated the

tensions in the relationship. (JA156; JA166–169; JA173). Sheriff Chapman was aware that there were issues between Ms. Cunningham and Captain Gilligan but was unaware of Ms. Cunningham filing any complaints against Captain Gilligan. (JA165; JA173–174; JA186–187; JA348; JA352). In the spring of 2020, because it was becoming noticeable that the working environment was not healthy at the ELS between Ms. Cunningham and Captain Gilligan, Sheriff Chapman and Undersheriff Mark Poland met with Ms. Cunningham. (JA156).

The problems appeared to stem from the management of a subordinate, Sgt. Gregory Johnson, and Ms. Cunningham's and Captain Gilligan's starkly different personalities. (JA157; JA174). Specifically, Ms. Cunningham's style was to be engaged at all levels with subordinates, and she took a very demanding, coach-like approach, while Captain Gilligan took more of a laissez-faire approach. (JA157). As it appeared that the two could not work together, Sheriff Chapman believed that either Ms. Cunningham or Captain Gilligan needed to be moved. (JA157; JA166–169). There was a position available under Major Dondero where Captain Gilligan could work and still participate in the operations in the ELS, so in June 2020, Sheriff Chapman pulled Captain Gilligan from the physical station and put him in the position under Major Dondero. (JA157; JA166–169; JA243–244).

Although Captain Gilligan was physically in another location and performing additional duties, he was not transferred at the time. (JA157). Captain Gilligan

remained the Captain of the ELS. (JA158). Captain Gilligan continued to provide oversight to the ELS while working under Major Dondero, and Ms. Cunningham continued as first lieutenant. (JA166–169). As Captain Gilligan was still the Captain of the ELS, the LCSO did not name an acting Captain because at the LCSO if a position is filled, it is not considered open. (JA158).

As a first lieutenant, Ms. Cunningham was already expected to be able to perform the duties of a station commander, so if Captain Gilligan's time was spent at headquarters, Ms. Cunningham was capable of underfilling as station commander. (JA157; JA195). At the LCSO when a position is filled, but the person filling the position is unavailable, the position is underfilled. (JA158). Positions at the LCSO are constantly being underfilled for different reasons, including but not limited to long-term leave of absences, training, special projects, staffing shortages, etc. (JA158).

On the other hand, if there is an open position because of a retirement, resignation, a promotion, or official transfer, then the Sheriff, in his discretion, may decide to name someone as "acting" in the open position. (JA158). Being named "acting," while temporary, is an official promotion or change of status. (JA158). Ms. Cunningham was not named "Acting Captain" during the period of June 2020 to March 2021 because that Captain position was not an open position. (JA158). On March 4, 2021, Captain Gilligan was officially transferred from the ELS to the

Emergency Communications Center, Administrative and Technical Services Division. (JA282).

On March 18, 2021, Ms. Cunningham filed a Charge of Discrimination with the Equal Employment Opportunity Commission (the "EEOC") against the Loudoun County Sheriff's Office (the "LCSO") based on sex and retaliation. (JA353-354). Ms. Cunningham received her Notice of Right to Sue from the EEOC on August 31, 2023. (JA013). On November 29, 2023, Ms. Cunningham filed her initial complaint against the LCSO, Michael L. Chapman, Mark Poland, Eric Prugh, Kenneth Dondero, and Thomas Gilligan, all in their individual and official capacities. (JA002). She then amended her complaint on February 22, 2024. (JA002; JA012-046).

The Amended Complaint asserted five counts: "Discrimination and Retaliation pursuant to 42 U.S.C. § 2000e (Against LCSO and Sheriff Chapman in his Official Capacity)" (Count One); "Denial of Equal Protection in Violation of 42 U.S.C. § 1983 Discrimination, Retaliation, Failure to Promote (Against All Defendants)" (Count Two); "Violation of Title VII of the Civil Rights Act of 1963 (Against Gilligan, LCSO, and the Sheriff)" (Count Three); "Violation of 42 U.S.C. § 1983 Policy and Custom Violation (Against LCSO and the Sheriff)" (Count Four); "Violation of the Virginia Human Rights Act (Against LCSO and the Sheriff)" (Count Five). (JA036–045). The district court dismissed Counts Two, Three, Four

and Five, leaving only Count One, Ms. Cunningham's Title VII claim.[1] Ms. Cunningham's Title VII claim included three distinct claims: discrimination based on gender, pay disparity based on gender, and retaliation. (JA038–040; JA584).

The basis for her claims was the contention that, as a result of her gender and in retaliation, from June 2020 through March 2021, Ms. Cunningham (1) was not named "Acting Captain" despite performing the duties of a station commander which is held by a captain, (2) was denied a Monday through Friday schedule while performing the duties of a station commander, and (3) was "demoted" to her rank first lieutenant because she was not subsequently promoted to captain despite performing the duties of a station commander. (JA038–040; JA353–354). On January 2, 2025, the LCSO filed its motion for summary judgment. (JA382–409). After briefing, the motion was heard on February 21, 2025. (JA010). The district court granted the LCSO's motion for summary judgment, making its ruling and findings from the bench without a memorandum opinion. (JA010; JA567–587).

The district court found that there were no material fact in dispute and that Ms. Cunningham's Title VII claims failed as a matter of law. (JA585–586). As to

[1] The Amended Complaint asserted its Title VII claims against both the LCSO and Sheriff Chapman in his official capacity. District courts have concluded "that either the sheriff's office or the sheriff in his or her official capacity is an employer within the meaning of Title VII." *Briggs v. Waters*, 455 F. Supp. 2d 508, 513 (E.D. Va. 2006) (citations omitted). As the LCSO and Sheriff Chapman in his official capacity are one in the same, the litigation proceeded against the LCSO.

the Title VII discrimination based on gender claim, the district court found that there was "no evidence of similarly situated employees who were outside the protected class who were treated differently, nor is there an adequate basis in fact for adverse employment action." (JA586). As to the Title VII pay disparity claim, the district court found that the proffered comparators were not appropriate comparators and that there was no evidence of pay disparity. (JA586). Finally, as to the Title VII retaliation claim the district court found that was "no evidence in the record that the defendant was on notice of protected activity all the way back in June of 2020" and that Ms. Cunningham's EEOC Charge of was filed in March of 2021 after all of the alleged adverse actions. (JA586–587).

## SUMMARY OF ARGUMENT

Ms. Cunningham's Title VII claims stem from the incompatible relationship between her and her supervisor, Captain Gilligan, that all outsiders believed to be caused by personality conflicts. The LCSO attempted to mitigate this problem through the immediate action of limiting Ms. Cunningham's and Captain Gilligan's interactions by physically moving Captain Gilligan to headquarters in June 2020. Ultimately, aside from conclusory statements from her affidavit, Ms. Cunningham could not point to evidence to support her Title VII claims for discrimination, pay disparity, or retaliation. As a result, the district court found that the LCSO was entitled to summary judgment. The overall premise of Ms. Cunningham's appeal is

that summary judgment was not appropriate because there was a dispute of fact. Ms. Cunningham's arguments in support of the issues presented in this appeal fare no better than her attempt to avoid summary judgment.

The first issue presented focuses on a specific alleged dispute of fact, whether there was enough evidence for a reasonable juror to conclude that the position of captain serving as station commander at the ELS was open at the time in question, thereby allowing Ms. Cunningham to have been named "acting" captain. Ms. Cunningham argues that summary judgment was not appropriate because the question of whether the LCSO took inconsistent positions with itself as it relates to the station commander position was question of fact for the jury. To support this argument, Ms. Cunningham directs this Court to select statements from the LCSO's EEOC Position Statement referencing Captain Gilligan: (1) "they transferred the station's Captain and one sergeant to other stations," (2) "once Captain Gilligan (hereinafter referred to as 'Gilligan') was transferred out of ELS, Cunningham ran the station in the absence of the captain," (3) "as soon as the Sheriff was informed that Cunningham felt that Gilligan was causing issues for her, he moved Gilligan out of ELS," and (4) "he supported Cunningham by ordering that Gilligan be transferred so that she did not have work with him." (JA499–503).

Ms. Cunningham, however, falls short in explaining how these select statements show a potential inconsistent position which would require a fact finder.

The most glaring failure is that the argument fails to take into consideration that when Captain Gilligan was initially moved in June 2020 it was only physically, and the LCSO did not officially transfer him into another captain position. The record shows that Captain Gilligan was officially transferred to a different captain's position in March 2021. Because he was not officially transferred until March 2021, he remained in the captain's position for the ELS.

LCSO's motion for summary judgment explained this timeline of being physically moved and then being officially transferred to another captain position. Nothing in the LCSO's motion for summary judgment's explanation contradicted the above four statements from the EEOC Position Statement. The motion for summary judgment just provided additional context and explanation. At summary judgment and in this appeal, Ms. Cunningham merely concludes the positions are inconsistent but fails to support the conclusion with facts in the record. There was no error by the district court, and this Court should affirm the award of summary judgment.

The second issue presented focuses narrowly on the district court's application of the Eastern District of Virginia's Local Rule 56. Ms. Cunningham argues that summary judgment was not appropriate because the district court misapplied Local Rule 56. This argument, which harps on form over substance, attempts to suggest that the district court improperly accepted the LCSO's statement

of facts without considering Ms. Cunningham's attempt to dispute them with her own statement of facts. The problem with this argument, however, is that it requires this Court to totally ignore that the district court explicitly indicated that it "looked very carefully and tried and endeavored to look at the record itself and determine whether there are any genuine issues of material facts in dispute." (JA585). There is no misapplication of the Local Rule, and even if there was, it is clear that the district court searched for disputed facts. There was no error by the district court, and this Court should affirm the award of summary judgment.

The third issue presented focuses on another specific alleged dispute of fact, whether there was enough evidence for a reasonable juror to conclude that the captains serving as station commanders were appropriate comparators. Ms. Cunningham argues that district court improperly determined that she failed to show appropriate comparators for her Title VII discrimination and pay disparity claims. At summary judgment and in this appeal, Ms. Cunningham fails to identify the facts upon which a reasonable juror could find that captains in the position of station commanders are appropriate comparators. Ms. Cunningham rests entirely on the contention that because she was a first lieutenant doing the job of station commander, the appropriate comparators would be the captains serving as station commanders. This is not enough to create a question of fact. Ms. Cunningham ignores the differences between the ranks of first lieutenants and captains as it relates

to hierarchy, promotions, job descriptions, duties, and supervisors. There was no error by the district court, and this Court should affirm the award of summary judgment.

In addition to the flaws in Ms. Cunningham's arguments in support of the issues presented, Ms. Cunningham's appeal suffers a far greater flaw. The issues presented in the appeal are not determinative as to whether summary judgment should be overruled. In other words, Ms. Cunningham has failed to challenge rulings by the district court that would remain unaffected by this Court ruling in favor of Ms. Cunningham on the specific issues she has presented, and this Court should affirm the award of summary judgment.

## STANDARD OF REVIEW

A district court's award of summary judgment is reviewed "*de novo*, applying the same standard applied by the district court." *Reynolds v. Am. Nat. Red Cross*, 701 F.3d 143, 149 (4th Cir. 2012) (citing *Henry v. Purnell,* 652 F.3d 524, 531 (4th Cir. 2011); *Med. Waste Assocs. Ltd. v. Mayor & City Council of Baltimore,* 966 F.2d 148, 150 (4th Cir. 1992)). Summary judgment is appropriate when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Bostic v. Schaefer,* 760 F.3d 352, 370 (4th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party." *Libertarian Party of Va. v. Judd,* 718 F.3d 308, 313

(internal quotation marks omitted). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). The Court "view[s] the facts and all justifiable inferences arising therefrom in the light most favorable to the nonmoving party . . . ." *Id.* at 312. Further, in reviewing the grant of summary judgment, the Court is "not limited to the grounds relied on by the district court" but "can affirm on any legal ground supported by the record." *Jackson v. Kimel*, 992 F.2d 1318, 1322 (4th Cir. 1993) (citing *Service & Training, Inc. v. Data Gen. Corp.,* 963 F.2d 680, 685 & n. 10 (4th Cir. 1992)).

## ARGUMENT

### I. Title VII standards.

The issues presented in this appeal do not directly require analysis of the Title VII standards, those standards, nonetheless, offer a foundation upon which to analyze Ms. Cunningham's arguments. To survive a motion for summary judgment a plaintiff must first "establish a prima facie case of disparate treatment, [and] a plaintiff must prove four elements: '(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class.'" *Cosby v. S.C. Prob., Parole & Pardon Servs.*, 93 F.4th 707, 714 (4th Cir. 2024) (quoting *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010)). "The similarly

situated element requires a plaintiff to 'provide evidence that the proposed comparators are not just similar in *some* respects, but 'similarly-situated *in all respects*.'" *Id.* (emphasis original) (quoting *Spencer v. Va. State Univ.*, 919 F.3d 199, 207–08 (4th Cir. 2019), *as amended* (Mar. 26, 2019) (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)).

Thus, "the plaintiff must prove that she and the comparator 'dealt with the same supervisor, were subject to the same standards[,] and engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Id.* (quoting *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 223–24 (4th Cir. 2019)). While, "a comparison between similar employees will never involve precisely the same set of work-related offenses occurring over the same period of time and under the same sets of circumstance," *Haynes*, 922 F.3d. at 223, it remains that "[t]he similarity between comparators and the seriousness of their respective offenses must be clearly established in order to be meaningful," *Lightner v. City of Wilmington*, 545 F.3d 260, 265 (4th Cir. 2008). *Id.*

Additionally, when a pay disparity claim "is based on comparators, the plaintiff must show that she is paid less than men in similar jobs." *Spencer*, 919 F.3d at 207 (citing *Brinkley-Obu v. Hughes Training, Inc.*, 36 F.3d 336, 343 (4th Cir. 1994)). When determining whether two jobs are similar, "courts consider 'whether

the employees (i) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications—provided the employer considered these latter factors in making the personnel decision.'" *Id.* (quoting *Bio v. Fed. Express Corp.*, 424 F.3d 593, 597 (7th Cir. 2005) (citing *Herster v. Bd. of Supervisors of Louisiana State Univ.*, 887 F.3d 177, 185 (5th Cir. 2018) (stating that a "variety of factors are considered when determining whether a comparator is similarly situated, including job responsibility, experience, and qualifications.")).

A Title VII retaliation claim under the *McDonnell Douglas* framework, requires a plaintiff to establish a similar prima facie: (1) "that [she] engaged in protected activity," (2) "that [her employer] took adverse action against [her]," and (3) "that a causal relationship existed between the protected activity and the adverse employment activity." *Foster v. Univ. of Maryland-E. Shore*, 787 F.3d 243, 250 (4th Cir. 2015) (citations omitted); *see also Noonan v. Consol. Shoe Co., Inc.*, 84 F.4th 566, 574 (4th Cir. 2023) (applying the same retaliation framework for Title VII retaliation and Equal Pay Act retaliation claims).

"[F]or an employee's activity to constitute protected 'opposition,' she must show (1) that she reasonably believed that the employment action she opposed constituted a Title VII violation and (2) that her conduct in opposition was reasonable." *Netter v. Barnes*, 908 F.3d 932, 937–38 (4th Cir. 2018) (internal

citations omitted). "An employee's belief that a Title VII violation has occurred may be completely reasonable, but if she fails to tie complaints about workplace conduct to her protected status, the employer could not have retaliated for engaging in a protected activity." *McIver v. Bridgestone Americas, Inc.*, 42 F.4th 398, 412 (4th Cir. 2022). "Without notice that an employee is complaining about discrimination based on their protected status, an employer has no means to distinguish between protected conduct and frivolous complaints about workplace disagreements unprotected by the law." *McIver v. Bridgestone Americas, Inc.*, 42 F.4th 398, 412 (4th Cir. 2022) (citing *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 280 (4th Cir. 2000) ("[I]t is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff")).

## II. The district court correctly determined, and the record demonstrates, that there was no genuine dispute of a material fact regarding the status of the station commander position at the Eastern Loudoun Station.

Ms. Cunningham argues that the district court overlooked a factual dispute as to whether the LCSO took inconsistent positions in its Position Statement filed with the EEOC (Pl.'s Summ. J. Exh. D) and its motion for summary judgment. The Opening Brief, however, fails to show how the positions taken are inconsistent with one another. It fails to offer any explanation or context as to how such 'inconsistent positions' "in and of itself, creates an issue of material fact that must be determined of trier of fact." (Dkt. No. 14-1, p. 21) (*see generally* Dkt. No. 14-1, pp. 21 - 26).

In order to fully examine this argument, this Court must trace back to the LCSO's statement of undisputed material facts[2] to determine which facts Ms. Cunningham was attempting to dispute. Presumably, those statements of fact are LCSO UMF Nos. 39 through 48. (JA388–389)[3] (citing JA157–158; JA165–169).

Through Sheriff Michael Chapman's deposition testimony and former Undersheriff Mark Poland's affidavit, LCSO's UMF Nos. 39 through 48, explained the differences of filling a position by making someone an "acting" rank and underfilling a position. First, LCSO's UMF Nos. 39 through 48 explained that although Captain Gilligan was moved to another physical location and performed additional duties, he was not officially transferred and remained the captain assigned to the ELS. (JA157–158). Second, they explained that because Captain Gilligan was not officially transferred and remained in the captain position assigned to the ELS as the station commander there was no open position to fill. Third, they explained that in situations where the position is filled but that person is unavailable, instead of naming someone "acting," the position is simply underfilled and performed by another rank without being named "acting." (JA157–158). Fourth,

[2] In its memorandum in support of its motion for summary judgment and in this brief, the LCSO refers to its numbered statements of undisputed material facts as "UMF No."

[3] The Joint Appendix contains documents that were originally filed with redactions and then later filed without the redactions. This brief cites to the unredacted versions contained in the Joint Appendix.

the undisputed material facts explained that because Captain Gilligan was not officially transferred and there was no open position the LCSO did not name an "acting" captain for the ELS. (JA157–158).

With that foundation set, this Court can turn to Ms. Cunningham's argument on appeal, which is, ostensibly, that Ms. Cunningham properly disputed LCSO's UMF Nos. 39 through 48 through her own affidavit and the LCSO's EEOC Position Statement. As the district court noted, Ms. Cunningham elected to generally dispute the separate facts set forth by the LCSO and then indirectly dispute them through her own statement of facts. (JA584–585) (referencing JA524). Her statement of facts, however, failed to create a genuine dispute as to the actual substance of LCSO's UMF Nos. 39 through 48, and, in essence, merely ran parallel to the LCSO's statement of undisputed material facts.

Specifically, the statements of fact offered by Ms. Cunningham in support of her claims that can be reasonably deemed 'attempting to dispute' LCSO UMF Nos. 39 through 48 were as follows:

> Plaintiff's SDF[4] No. 15: "When Gilligan was removed from command of the Eastern Loudoun Station, the full time responsibility for running the station fell to Cunningham. This responsibility was significantly greater than a temporary coverage usually performed by an Assistant Station Commander in the temporary absence of a Station Commander. Ex. C, 15, Ex. D at 5-6. ("Once Captain Gilligan was transferred out of ELS, Cunningham ran the

[4] In her memorandum in opposition to summary judgment, Ms. Cunningham labeled her statements of disputed fact as "Plaintiff's SDF No."

station in the absence of the Captain"). (JA461-462) (citing JA496, JA500–501).

Plaintiff's SDF No. 16: "The LCSO has taken several positions regarding Gilligan. In Paragraph 8 of the Position Statement filed by the Sheriff with the EEOC for charge 570-2020-02001, the Sheriff asserted that 'from June 15, 2020 until March 4, 2021, the Eastern Loudoun Station was without a Station Commander.' Exhibit E. In the Position Statement filed by the Position of the [sic]Sheriff of the Loudoun County for charge 570-2022-00950, the Sheriff asserted 'they transferred the Station's Captain and one sergeant to other stations' and 'once Captain Gilligan was transferred out of ELS, Cunningham ran the station in the absence of the Captain' and 'as soon as the Sheriff was informed that Cunningham felt that Gilligan was causing issues for her he moved Gilligan out of ELS' and 'he supported Cunningham by ordering that Gilligan be transferred so that she did not have to work with him.' Exhibit D, pages 4-7, 17 (under seal)." (JA424–425) (citing JA498–503).

Plaintiff's SDF No. 17: "Despite these statements, in the Memorandum in Support of the Motion for Summary Judgment, the LCSO asserts that Gilligan remained as station commander and 'provided oversight' to the ELS. Dkt. #111, ¶ 40, 41." (JA425) (citing JA388).

Plaintiff's SDF No. 18: "Beginning on June 15, 2020, Gilligan was assigned to a position at Headquarters and did not function as the Station Commander though he still wrote Cunningham's annual performance review. Ex. C, ¶ 16." (JA425) (citing JA495).

Plaintiff's SDF No. 20: "The LCSO has never asserted that Cunningham was merely underfilling as Station Commander. Ex. C, ¶ 18." (JA425) (citing JA495).

Plaintiff's SDF No. 21: "From June 15, 2020 through March 4, 2021, the ELS was short staffed because no one replaced the Assistant Station Commander while Cunningham was fulfilling the role of the Station Commander and no other stations provided any manpower assistance to the ELS during this time. Ex. C, ¶ 19." (JA425) (citing JA495–496).

Plaintiff's SDF No. 22: "Despite Cunningham fulfilling the role of Station Commander, she was not made 'Acting Station Commander' even though the

> ELS had no Station Commander and she was not compensated as a Station Commander, and she was not relieved of the duty officer requirement held by the Assistant Station Commanders. Ex. C, ¶ 20, Ex. E." (JA425) (citing JA496; JA498–503).

None of Ms. Cunningham's statements of disputed facts create a genuine issue of material fact, nor do they elucidate prior statements by the LCSO which would create an issue of material fact. Moreover, even if an issue of material fact was created by her assertions, her claims still fail as a matter of law.

### A. The LCSO did not take inconsistent positions in its EEOC Position Statement and its summary judgment statement of undisputed material facts.

Ms. Cunningham argues that the EEOC Position Statement[5] contained assertions that were inconsistent with the positions in the LCSO's motion for summary judgment, and therefore, in ruling, the district court resolved a factual dispute. Ms. Cunningham's argument fails, however, because the cherry-picked sentences from the EEOC Position Statement are consistent with the LCSO's assertion all along, that Captain Gilligan was physically removed from the station, but not transferred from his position of captain assigned to the ELS as the station

---

[5] It must be noted that the EEOC Position Statement that Ms. Cunningham relies on for the argument that the LSCO took inconsistent positions is heavily redacted. (*See* JA498–503). The redacted version was the only version in the record before the district court. (JA572). Despite the fact that select statements, contained in a five-page document where any possible context has been redacted, are hardly sufficient evidence to establish a contrary position, there is no evidence in the record that the district court did not accept the proffer.

commander. This is evidenced by the fact that Captain Gilligan remained in Ms. Cunningham's chain of command performing her review. While Ms. Cunningham claimed that was a retaliatory act, it is, again, consistent with the notion that Captain Gilligan was still the captain and was only physically moved to another location as an immediate Band-Aid because of their inability to work together. (JA157–158; JA165–169).

Moreover, any alleged conflict between the EEOC Position Statement (the "Initial Statement") and the subsequent motion for summary judgment (the "Subsequent Statement") would have no impact on the February 5, 2021 Informational Memorandum which contains the underlying relevant facts that Captain Gilligan was officially transferred after Ms. Cunningham had been underfilling as station commander. Ms. Cunningham characterizes the "Initial Statement" as stating that Captain Gilligan was officially transferred in June 2020. Whereas the "Subsequent Statement" explains that Captain Gilligan was physically moved in June 2020 and then officially transferred in March 2021, resulting in Captain Gilligan filling the captain position until March of 2021. The "Initial Statement" and "Subsequent Statement," however, both occurred after the February 5, 2021 Informational Memorandum, which states that Captain Gilligan's transfer would become official March 4, 2021. (JA264) (citing JA281–282).

None of Ms. Cunningham's statements of fact provide a factual basis to dispute the explanation of when a position is filled versus when a position is underfilled. The statements listed above generally set forth that Ms. Cunningham was performing duties at the ELS which a station commander would perform which is not inconsistent with underfilling a position. While Ms. Cunningham used the phrase that Captain Gilligan was "removed from command," that conclusory statement does nothing to dispute the February 5, 2021 LCSO Informational Memorandum indicating all of the promotions and transfers effective March 4, 2021, showing that Captain Gilligan was officially transferred after Ms. Cunningham had been underfilling as station commander. (JA264) (citing JA281–282).

Ultimately, none of Ms. Cunningham's proffered statements create a question of fact in and of itself as to the underlying fact Ms. Cunningham would need to prove, which is that Captain Gilligan was moved out of his position of captain serving as station commander at the ELS making the position open for someone to be named "acting" captain. As a result, Ms. Cunningham's argument is nothing more than a red herring attempting to manufacture an "inconsistent position"

There is nothing in the record to support Ms. Cunningham's argument that there was a disputed material fact because of allegedly inconsistent positions taken by the LCSO. Thus, the district court made no error, and this Court must affirm the

district court's ruling entering judgment in favor of the LCSO as to Ms. Cunningham's Title VII discrimination, disparate pay, and retaliation[6] claims.

**B. Even if there was a disputed fact as to this particular issue, Ms. Cunningham's Title VII claims still fail as a matter of law.**

Additionally, even if this Court resolved this particular issue in Ms. Cunningham's favor, it would not warrant a reversal of the district court's decision. First, the district court ruled that Ms. Cunningham's discrimination claim failed because there was no evidence that similarly situated employees were treated differently and Ms. Cunninham experienced no adverse employment actions. (JA586). While the Opening Brief does not explain how the specific factual issue involving the station commander position is material to her Title VII claims, for the sake of argument it could plausibly be related to whether there was an adverse action. Nonetheless, the claim would still fail because there was no evidence of similarly situated employees being treated differently.

Second, the district court ruled that the pay disparity claim failed because Ms. Cunningham failed to prove appropriate comparators but, even if there was an

[6] The district court found that Ms. Cunningham's Title VII retaliation claim failed, holding "that there is no evidence in the record that the defendant was on notice of protected activity all the way back in June of 2020, that the EEOC charge of discrimination was filed in March of 2021, and the alleged adverse actions all took place before then." (JA586–587). There is no argument presented as to how the claimed error regarding Ms. Cunningham's inconsistent position argument would have any bearing on the district court's retaliation claim holding.

appropriate comparator, Ms. Cunningham did not show she was being paid less. While the Opening Brief does not explain how the specific factual issue involving the station commander position is material to her Title VII claims, *arguendo* it could plausibly be related to whether there was an appropriate comparator.[7] Nonetheless, the claim would still fail because there was no evidence of pay disparity regardless of the existence of an appropriate comparator.

Third, the district court found that Ms. Cunningham's Title VII retaliation claim failed holding "that there is no evidence in the record that the defendant was on notice of protected activity all the way back in June of 2020, that the EEOC charge of discrimination was filed in March of 2021, and the alleged adverse actions all took place before then." (JA586–587). There is no argument presented as to how the claimed error regarding Ms. Cunningham's inconsistent position argument would have any bearing on the district court's retaliation claim holding.

Again, the district court made no error, and this Court must affirm the district court's ruling entering judgment in favor of the LCSO as to Ms. Cunningham's Title VII discrimination, disparate pay, and retaliation claims.

[7] Ms. Cunningham's claim that she should have been made "acting" captain cuts against her pay disparity claim because it highlights the fact that there is a difference between first lieutenants and captains making it clear that captains serving as station commanders are not appropriate comparators. Thus, if the factual issue related to filling versus underfilling has bearing on the pay disparity, it does so negatively showing that her pay disparity claim is nothing more than the discrimination claim that she should have been promoted to acting captain.

## III. The district court's application of the Eastern District of Virginia's Local Rule 56 did not alter or violate the application of summary judgment standards for determining whether there were genuine issues of material facts in dispute.

In rendering its decision, the district court noted that "Local Rule 56 sets out a clear method for the moving party to identify those facts, and requires the opposing party – in this case, the plaintiff -- to clearly address and either agree with or dispute those facts." (JA584–585). Under the Local Rule, "[i]n determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its listing of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." Local R. of Civ. P. 56(B). The district court proceeded to state "[t]hat was not done here. It simply was not done in conformity with Local Rule 56, and the Court takes that into account, although the Court has looked very carefully and tried and endeavored to look at the record itself and determine whether there are any genuine issues of material facts in dispute." (JA585).

Ms. Cunningham's entire argument is premised on the notion that the district court elevated form over substance stressing the language "and the Court takes that into account . . . ." (Dkt. No. 14-1, pp. 23 – 24).[8] In making this argument and

---

[8] The Opening Brief cites to *White v. Golden Corral of Hampton*, LLC, 2014 U.S. Dist. LEXIS 33795 (E.D.Va 20214), emphasizing the district court's language "the Court will not elevate form over substance." (Dkt. No. 14-1, p. 29). In a later decision, this decision was used as an example that "courts sometimes will refuse to

placing emphasis on that language, however, Ms. Cunningham, attempts to downplay or ignore the rest of the district court's statement; specifically, that "the Court has looked very carefully and tried and endeavored to look at the record itself and determine whether there are any genuine issues of material fact in dispute." (JA585). The district court's words clearly and unequivocally indicate that it did not elect to implement a severe form over substance remedy and did not simply accept the LCSO's statement of undisputed material facts as admitted, despite the fact that Ms. Cunningham only offered general unsupported claims against the LCSO's statement of undisputed material facts. *Cf. Brown v. Serenity C & C, Inc.*, 391 F. Supp. 3d 546, 552 (E.D. Va. 2019) (holding that "due to Plaintiff's failure to comply with Local Rule 56 and failure to dispute facts or provide evidence, *the Court deems the facts identified by Defendant as undisputed and admitted by Plaintiff*") (emphasis added); *JDS Uniphase Corp. v. Jennings*, 473 F. Supp. 2d 705, 707 (E.D. Va. 2007) (deeming facts admitted because non-moving party "did not identify with any specificity which facts, if any, were disputed").

The district court did not rule that it was not accepting Ms. Cunningham's contentions or that it was accepting the LCSO's statements of undisputed material facts because they were not opposed. The district court further demonstrated this

---

"elevate form over substance." *Brown v. Serenity C & C, Inc.*, 391 F. Supp. 3d 546, 551 (E.D. Va. 2019). Counsel was unable to find any case law suggesting that district courts "shall not" elevate form over substance.

through its continued inquiry as to the facts during the hearing. Consequently, the district court's language that it "takes that into account" is nothing more than acknowledgment that Ms. Cunningham may not have guided the district court as thoroughly as possible to sections of the record to show there was material fact in dispute, and, thereby, left it in the hands of the district court to search the record itself. There is nothing in the record to support Ms. Cunningham's form over substance argument. Indeed the fact that the district court qualified the "takes that into account" language by stating "the Court has looked very carefully and tried and endeavored to look at the record itself and determine whether there are any genuine issues of material fact in dispute," favors the opposite conclusion.

More importantly, there is nothing in the record to demonstrate to this Court that there is in fact a material fact in dispute. *See Hodgin v. UTC Fire & Sec. Americas Corp.*, 885 F.3d 243, 251 n. 3 (4th Cir. 2018) (appellants argued the district court cited the wrong legal standard, but Fourth Circuit held it did not need to address the argument because the district court "did not in fact apply that rule in its analysis" and, even if it did, the court "may affirm [a grant of summary judgment] on any ground that the law and the record permit"). Ms. Cunningham was unable to point to more than a scintilla of evidence to support her Title VII claims. The district court made no error, and this Court must affirm the district court's ruling entering

judgment in favor of the LCSO as to Ms. Cunningham's Title VII discrimination, disparate pay, and retaliation claims.

## IV. **The district court correctly determined that Ms. Cunningham failed to show applicable comparators in order for her Title VII discrimination and pay disparity claims to survive summary judgment.**

The district court held that "[f]or comparators to be appropriate, they have to be similar *in all the relevant ways*, and in this case, neither the first lieutenants nor the station commanders who were captains are appropriate comparators." (JA586) (emphasis added). The district court did not state that the comparators have to be similar in every way but, rather, qualified that it was the relevant ways.

When determining whether two jobs are similar in the relevant ways under Title VII, "courts consider 'whether the employees (i) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications—provided the employer considered these latter factors in making the personnel decision.'" *Spencer*, 919 F.3d at 207 (quoting *Bio*, 424 F.3d at 597 (citing *Herster*, 887 F.3d at 185 (stating that a "variety of factors are considered when determining whether a comparator is similarly situated, including job responsibility, experience, and qualifications.")). Ultimately, "[w]hile Title VII's 'similarity' requirement demands less of plaintiffs than the Equal Pay Act's 'equality' requirement, it is not toothless:

the plaintiff must provide evidence that the proposed comparators are not just similar in *some* respects, but similarly-situated *in all respects*." *Id.* (emphasis original).

Ms. Cunningham's argument is that because she was a first lieutenant doing the job of station commander the appropriate comparators would be the captains serving as station commanders. The Opening Brief does not direct the Court to any facts in the record that show other captains' job descriptions, standards, supervisors, or qualifications. There is no other argument as to why the station commanders holding the rank of captain were appropriate comparators. Rather, Ms. Cunningham relies on the single argument that "Cunningham and the other station commanders were 'engaged in the same conduct,'" and focuses on differences between the station commanders holding the rank of captain and herself. (Dkt. No. 14-1, pp. 33 – 34).

Further, in making the general argument that she was performing the work of a station commander, Ms. Cunningham fails to address the issue of rank, which serves as "differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *See Haynes*, 922 F.3d at 223–24 (a plaintiff must have "engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it") (citations omitted); *see also Spencer*, 919 F.3d at 208 ("[o]nce a plaintiff establishes a prima facie case, the burden of production shifts to the employer to proffer a legitimate, nondiscriminatory explanation for the wage

disparity") (citing *Guessous v. Fairview Prop. Investments, LLC*, 828 F.3d 208, 216–17 (4th Cir. 2016)). The obvious reason for the failure to address rank is that it would clearly show that this claim is a failure to promote claim dressed up as pay disparity claim.

Furthermore, the district court held that even if there was an appropriate comparator, Ms. Cunningham failed to show she was being paid less. The only evidence Ms. Cunningham put forth as to her wages were that (1) "[i]n 2020, [Ms. Cunningham's] W2 wages were $123,220.87," (2) "[o]f that amount, $14,854.13 was for overtime she was required to work because she was performing the job of both the Station Commander and the Assistant Station Commander at the busiest station," and (3) "Cunningham's base wages were $108,366.74." JA464. The only evidence Ms. Cunningham put forth as to alleged comparators' wages were that "[i]In 2020, there were seven individuals that held the rank of Captain in the operations division for the full year: Captain Ahlemann's 2020 W2 wages were $118,923.60; Captain DeLitta's 2020 W2 wages were $123,528.45; Captain Gilligan's W2 wages were $126,539.57; Captain Hibberd's W2 wages were $134,347.05; Captain McDonald's W2 wages were $123,361.67; Captain Schleiden's W2 wages were $131,938.51." JA464–465. There is no obvious difference in pay and Ms. Cunningham failed to provide facts that would allow a reasonable juror to determine there was an actual difference.

While Ms. Cunningham has not challenged the district court's determination that she failed to put on evidence of pay disparity, the record provides further support of her failure to do so. Moreover, there is nothing in the record that suggests or hints at unlawful discriminatory motive. *See Spencer*, 919 F.3d at 207. The most telling is the fact that Ms. Cunningham was not claiming any damages that come close to resembling pay disparity damages. In her initial disclosures, she simply provided that "damages are still being calculated and will be provided." (JA361–365). Then, in her Answers to Interrogatories, when asked to describe all the "substantial economic loss, including salary, bonuses, benefits, and other compensations" and to itemize the damages she suffered as alleged in the Amended Complaint, she makes no claim for lost wages. (JA366–370). In other words, there was no attempt to show that Male Comparators A, B, and C were paid X, and Ms. Cunningham was paid Y, which was less than X.

The district court made no error, and this Court must affirm the district court's ruling entering judgment in favor of the LCSO as to Ms. Cunningham's Title VII disparate pay claim.

## CONCLUSION

This Court should affirm the District Court's order granting summary judgment in favor of Appellee-Defendant Loudoun County Sheriff's Office.

Respectfully submitted,

/s/ Alexander Francuzenko

Alexander Francuzenko
Philip C. Krone
COOK CRAIG & FRANCUZENKO, PLLC
3050 Chain Bridge Road, Suite 200
Fairfax, Virginia 22030
(703) 865-7480

*Counsel for Appellees*

**UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT**

**No.** 25-1271 **Caption:** Colette Cunningham v. Loudoun County Sheriff's Office

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**
Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

**Type-Volume Limit for Briefs if Produced Using a Computer:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 15,300 words or 1,500 lines. A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type. See Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

**Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words. Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2) & 40(d)(3).

**Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6).

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

☑ this brief or other document contains 7,505 [*state number of*] words

☐ this brief uses monospaced type and contains ______ [*state number of*] lines

This brief or other document complies with the typeface and type style requirements because:

☑ this brief or other document has been prepared in a proportionally spaced typeface using Microsoft Word [*identify word processing program*] in 14 point Times New Roman [*identify font size and type style*]; **or**

☐ this brief or other document has been prepared in a monospaced typeface using ______ [*identify word processing program*] in ______ [*identify font size and type style*].

(s) Alexander Francuzenko

Party Name Appellees

Dated: 08/29/2025