Record No. 25-1271

IN THE

# United States Court of Appeals

FOR THE FOURTH CIRCUIT

COLETTE CUNNINGHAM,

Plaintiff-Appellant,

v.

LOUDOUN COUNTY SHERIFF'S OFFICE, *et al*,

Defendants-Appellees.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA AT ALEXANDRIA

## APPELLANT'S REPLY BRIEF

Thomas Kenneth Plofchan, Jr.
WESTLAKE LEGAL GROUP PLLC
46175 Westlake Drive, Suite 320
Potomac Falls, VA 20165
Tel: (703) 406-7616
tplofchan@westlakelegal.com

Counsel for Plaintiff-Appellant

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ............................................................ ii

**ARGUMENT** ................................................................................ 1

**CERTIFICATE OF SERVICE** ....................................................... 36

# TABLE OF AUTHORITIES

## CASE LAW

*Alexander v. Connor*, 105 F.4th 174, 178 (4th Cir. 2024)........................29

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)......................30

*Blagmon v. Hanover County*, 2025 U.S. Dist. LEXIS 113253....................
.......................................................................... *24, 27, 28, 29, 33*

*Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 190 (4th Cir. 2017)............2

*Cowgill v. First Data Techs., Inc.*, 41 F.4th 370, 381-83 (4th Cir. 2022) ...
..........................................................................................27

*Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 249 (4th Cir. 2015).......25

*Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 223 (4th Cir. 2019) ..25

*Holland v. Washington Homes, Inc.*, 487 F.3d 208, 214 (4th Cir. 2007)....
.......................................................................................... 31, 32, 33

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, (1973)..........................
.......................................................................... 24, 25, 26, 29, 31

*Nguyen v. CNA Corp.*, 44 F.3d 234, 236 (4th Cir. 1995)............................1

*Noonan v. Consol. Shoe Co., Inc.*, 84 F.4th 566, 572 (4th Cir. 2023).....25

*Polak v. Va. Dep't of Env't Quality*, 57 F.4th 426, 429-32 (4th Cir. 2023).
..........................................................................................30

*S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003) ..........................................................................2

*Spencer v. Va. State Univ.*, 919 F.3d 199, 207 (4th Cir. 2019) .............27

*Tex. Dep't. of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981) ............26

*Tinsley v. City of Charlotte*, 854 F. App'x 495, 501 (4th Cir. 2021).. 27, 30

*Villa v. CavaMezze Grill, LLC*, 858 F.3d 896, 901 (4th Cir. 2017) .......31

*Wannamaker-Amos v. Purem Novi, Inc.*, 126 F.4th 244, 254-55 (4th Cir. 2025) ............................................................... 24, 25, 26, 32, 33

**STATUTES**

42 U.S.C. § 2000e ......................................................................24

**RULES**

Fed. R. Civ. P. Rule 26 ........................................................ 1, 3, 31

Fed. R. Civ. P. Rule 37 ............................................................ 1, 2

COMES Now Collette, Cunningham, by counsel, and files this Reply to the Response Brief of Appellees. In support thereof, Cunningham states as follows:

Cunningham restates all arguments set forth in her Opening Brief (Doc. 14) as well as all arguments set forth in her Memorandum in Support of Plaintiff's Motion to Dismiss Defendants' Motion for Summary Judgment ("Memorandum to Dismiss") (JA447, *et seq*.) because in reviewing a District Court's granting of a motion for summary judgement, this Court considers the matter *de novo*. *Nguyen v. CNA Corp*., 44 F.3d 234, 236 (4th Cir. 1995).

**A. <u>Appellees Should Not Benefit from their Failure to Disclose</u>**

As stated in Cunningham's Opening Brief, and in her Memorandum to Dismiss, the allegations contained in the affidavit of Poland and Dondero are in contravention to the facts asserted in Cunningham's affidavit; the Loudoun County Sheriff Office's ("LCSO") previous statements, including those made to the EEOC; and, were not disclosed as required by Rule 26. Notably, the District Court did not rule on Cunningham's Motion to Dismiss pursuant to Rule 37, as argued in her Memorandum to Dismiss. JA452, *et seq*.

As noted in Cunningham's Memorandum to Dismiss, this Court, in *S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003), articulated factors that courts can consider when deciding whether a defendant's failure to disclose was substantially justified or harmless. In any event, the defendants, as the non-disclosing parties, had the burden of establishing the non-disclosure was substantially justified or harmless. *Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 190 (4th Cir. 2017)

Consistent with her position that the LCSO had previously asserted that Gilligan was removed as the station commander, JA461, Cunningham also argued that the affidavits of Dondero and Poland contained information that was not previously disclosed in discovery. JA450 The District Court did not rule on Cunningham's request for Rule 37 sanctions, effectively ignoring Cunningham's rejection and countering of the disputed facts alleged by Poland and Dondero, JA458-465, her "surprise as [she] could not have reasonably predicted that the defendant would present an entirely new theory of its case at such a stage: that [LCSO] was administratively prevented from promoting Cunningham, or increasing her pay, or changing her work schedule; and that Gilligan

always remained as the station commander even though he was working at headquarters and was not performing any work at the Eastern Loudoun Station. Further, Cunningham could not have predicted that the LCSO would assert that Cunningham's management of Sergeant Johnson, for which he was exonerated, was a factor in her non-promotion, non-compensation, and non-Scheduling." JA457

These statements contained in Dondero's and Poland's affidavits are materially in opposition to statements made by the LCSO previously in its EEOC statement and prior responsive documents. Additionally, they were presented in violation of Rule 26 in that Dondero and Poland were only designated as having knowledge of their own employment history and potentially having knowledge of Cunningham's employment history. JA449, JA488-9 There is no designation of Dondero or Poland having knowledge with regard to Gilligan's employment history. *Id.* Regardless, the alleged facts are disputed by Cunningham and other evidence in the record, it was improper for the District Court to grant summary judgement.

### B. **Cunningham Properly Disputed Appellees' "Undisputed Facts"**

Cunningham sets forth 32 paragraphs that dispute the allegations of "undisputed" facts claimed by the Defendants. JA458-464 These 32 paragraphs reference specific statements from the record and are supported by Cunningham's affidavit, JA492-497, and directly contravene the Defendants' alleged "undisputed" facts. Cunningham's facts dispute those of the Defendants and include Cunningham's assertion that Gilligan was not her supervisor and did not participate in running the Eastern Loudoun Station. If at trial Cunningham successfully proves her facts, the LCSO position that she was ineligible for promotion because Gilligan was still in the position of running the ELS would be proven false.

Cunningham specifically and directly disputes the Appellees' assertion of material facts by reference to the record and her affidavit.

The following chart simplifies the presentation and to replies to Appellees' assertion that the facts are undisputed. The simple or incomplete statements of the Defendants were challenged with regard to almost all the Defendants' alleged "undisputed" facts. In addition to identifying the dispute in the Memorandum to Dismiss, the memorandum referred to the accompanying record or paragraph in

Cunningham's affidavit that provided further factual support to Cunningham's rebuke that the facts were undisputed.

| **Defendants' Assertion of Undisputed Facts** | **Description** | **Cunningham's Challenge to Assertion of Undisputed Facts with JAReference Incorporating Reference to Record or Affidavit** |
|---|---|---|
| 1 | From 2019 through 2021, the Loudoun County Sheriff Office (the "LCSO") operated with the following ranks under the Sheriff: Undersheriff, Lieutenant Colonel, Major, Captain, First Lieutenant, Second Lieutenant, Sergeant, Deputy First Class, and Deputy. | Undisputed |
| 2 | Currently, of the LCSO's sworn employees, 13% are women, with about 9% of the women having supervisory or greater leadership positions | Undisputed |
| 3 | As it relates to the operations division, the county is divided into four stations:<br>Dulles Station, Ashburn Station, Eastern Loudoun Station ("ELS"), and Western Loudoun Station ("WLS"). | Undisputed |
| 4 | The ELS is the busiest of the stations. | Undisputed |
| 5 | Each station has a Station Commander, which is held by a Captain, and an Assistant Station Commander, which is held by a First Lieutenant. | JA458, ¶1 |

| Defendants' Assertion of Undisputed Facts | Description | Cunningham's Challenge to Assertion of Undisputed Facts with JAReference Incorporating Reference to Record or Affidavit |
|---|---|---|
| 6 | First Lieutenants in the role of Assistant Station Commanders are expected to be able to perform the duties of the Captain and perform the duties of Station Commander at any time or when needed. | JA459, ¶3 |
| 7 | The First Lieutenant position is a demanding position and is a pivotal transitionary command staff position in the sense that a First Lieutenant is still in the weeds but taking on bigger picture responsibilities. | Undisputed |
| 8 | The First Lieutenant position in the role of Assistant Station Commander is also a demanding position because it involves being a duty officer. | JA459, ¶4 |
| 9 | The duty officer is essentially the supervisor during a certain shift. When that shift involves non-business hours, the duty officer is the highest ranking officer immediately available and providing supervision. | JA459, ¶7 |
| 10 | The duty officer during those times is the face of the command staff. | JA459, ¶7 |
| 11 | The overarching purpose of the duty officer is to be a focal point of information during the shift. | JA459, ¶7 |

| Defendants' Assertion of Undisputed Facts | Description | Cunningham's Challenge to Assertion of Undisputed Facts with JAReference Incorporating Reference to Record or Affidavit |
|---|---|---|
| 12 | The duty officer is provided with updates on incidents that are occurring so that they may provide oversight, guidance, or assistance as necessary. Then, the duty officer is able to provide a summary of the activity to other command staff and to the next shift. | JA459, ¶7 |
| 13 | By being the focal point of information, it provides consistency in management during the shift and during shift transitions. | JA459, ¶7 |
| 14 | In law enforcement, there are always issues with staffing from retirements, injuries, training, leave, and long-term leaves of absence. | Undisputed |
| 15 | The COVID pandemic exacerbated the issues with officers being out. | Undisputed |
| 16 | Staffing is one of the reasons that the duty officer plays such a critical role in the dissemination of information up the chain of command and down the chain of command. | JA459, ¶7; JA463, ¶21 |
| 17 | Shortly after the start of the COVID pandemic, the LCSO implemented a new duty officer rotation which required a First Lieutenant to be on call during non-business hours, so that there would be a command level officer available. | JA459, ¶7; JA463, ¶¶22, 25; JA463, ¶¶26, 27; JA464, ¶¶26, 27 |

| Defendants' Assertion of Undisputed Facts | Description | Cunningham's Challenge to Assertion of Undisputed Facts with JAReference Incorporating Reference to Record or Affidavit |
|---|---|---|
| 18 | The duty officer rotation included on-call hours | JA459, ¶7; JA463, ¶¶22, 25; JA464, ¶¶26, 27 |
| 19 | In July 2020, the First Lieutenants developed a strategy to cover the periods of time after midnight when there was not an assigned duty officer and the First Lieutenant covering would be eligible for on-call time from midnight to 8:30 am. | JA459, ¶7; JA463, ¶¶22, 25; JA464, ¶¶26, 27, 28, 29 |
| 20 | Plaintiff started working as a deputy with the Loudoun County Sheriff's Office in August of 2002. | Undisputed |
| 21 | On April 7, 2016, Plaintiff was promoted to Sergeant. | Undisputed |
| 22 | On November 2, 2017, Plaintiff was promoted to Second Lieutenant. | Undisputed |
| 23 | On January 23, 2020, Plaintiff was promoted to First Lieutenant. | Undisputed |
| 24 | At the time she was promoted to First Lieutenant, Plaintiff was assigned to the ELS and was a duty officer. | JA459, ¶5 |
| 25 | During the period of June 2020 to March 2021, the First Lieutenants of the other stations were Buckman (male) (WLS), Earley (male) (Dulles Station), and Holway (female) (Asburn). | JA460, ¶9 |
| 26 | As a First Lieutenant at the ELS, Plaintiff was the Assistant Station Commander. | JA461, ¶15 |

| Defendants' Assertion of Undisputed Facts | Description | Cunningham's Challenge to Assertion of Undisputed Facts with JAReference Incorporating Reference to Record or Affidavit |
|---|---|---|
| 27 | The Station Commander at the ELS was Captain Thomas Gilligan. | JA460, ¶10; JA461, ¶15; JA462, ¶¶16, 17, 18; JA463, ¶¶20, 21, 22 |
| 28 | Plaintiff and Captain Gilligan did not get along and management issues with one of Plaintiff's subordinates, Sergeant Greg Johnson ("Sgt Johnson"), were exacerbating the tensions in the relationship. | JA460, ¶¶11, 12; JA461, ¶¶13, 14, 15; JA463, ¶19 |
| 29 | In the spring of 2020, because it was becoming that noticeable that the working environment was not healthy at the station between Plaintiff and Captain Gilligan Sheriff Chapman and Undersheriff Poland met with Ms. Cunningham. | JA460, ¶¶11, 12; JA461, ¶¶13, 14, 15; JA463, ¶19, 23 |
| 30 | The problems appeared to stem from the management of a subordinate, Sgt. Gregory Johnson, and their different personalities. | JA460, ¶¶11, 12; JA461, ¶¶13, 14, 15; JA463, ¶19, 23, 24 |
| 31 | Specifically, Ms. Cunningham's style was to be engaged at all levels with subordinates and she took a very demanding, coach-like approach, while Captain Gilligan was more of a laissez-faire approach. | JA460, ¶¶11, 12; JA461, ¶¶13, 14, 15; JA463, ¶19, 23, 24 |
| 32 | Ms. Cunningham never mentioned any concerns that she believed Captain Gilligan was discriminating against her based on her gender. | JA460, ¶¶11, 12; JA461, ¶¶13, 14; JA463, ¶19 |

| Defendants' Assertion of Undisputed Facts | Description | Cunningham's Challenge to Assertion of Undisputed Facts with JAReference Incorporating Reference to Record or Affidavit |
|---|---|---|
| 33 | As it appeared that the two could not work together, Sheriff Chapman believed that Plaintiff or Captain Gilligan needed to be moved. | JA460, ¶¶10, 11, 12; JA461, ¶¶13, 14, 15; JA462, ¶¶16, 17, 18; JA463, ¶¶19, 20, 21, 22, 23 |
| 34 | There was a position available under Major Dondero where Captain Gilligan could work and still participate in the operations in the ELS, so in June 2020, Sheriff Chapman pulled Captain Gilligan from the physical station and put him in the position under Major Dondero. | JA460, ¶10; JA461, ¶15; JA462, ¶¶16, 17, 18; JA463, ¶¶19, 20, 21, 22, 23 |
| 35 | It was easier to have Captain Gilligan provide assistance at headquarters than it was to move Ms. Cunningham. | JA460, ¶10; JA461, ¶15; JA462, ¶¶16, 17, 18; JA463, ¶¶19, 20, 21, 22, 23 |
| 36 | Again, as a First Lieutenant, Ms. Cunningham was already expected to be able to perform the duties of a Station Commander, so if Captain Gilligan's time was spent at headquarters, Ms. Cunningham was capable of underfilling as Station Commander. | JA460, ¶10; JA461, ¶15; JA462, ¶¶16, 17, 18; JA463, ¶¶19, 20, 21, 22, 23 |
| 37 | Additionally, the ELS has more staff than the other stations and at the time had a strong sergeant in Sgt. Sam Harwood. | JA459, ¶7; JA463, ¶21 |

| **Defendants' Assertion of Undisputed Facts** | **Description** | **Cunningham's Challenge to Assertion of Undisputed Facts with JAReference Incorporating Reference to Record or Affidavit** |
|---|---|---|
| 38 | At the time in question, during operations meetings, First Lieutenants and Captains would be reminded that each station needed to be providing assistance and support to the other stations, whether it be guidance, supervision, manpower, or resources. | JA459, ¶7; JA463, ¶21 |
| 39 | While Captain Gilligan was physically in another location and performing additional duties, he was not transferred at the time. | JA460, ¶10; JA461, ¶15; JA462, ¶¶16, 17, 18; JA463, ¶¶19, 20, 21, 22, 23 |
| 40 | Captain Gilligan remained the Captain of the ELS. | JA460, ¶10; JA461, ¶15; JA462, ¶¶16, 17, 18; JA463, ¶¶19, 20, 21, 22, 23 |
| 41 | Captain Gilligan continued to provide oversight to the ELS while working under Major Dondero and Plaintiff could continue as First Lieutenant. | JA460, ¶10; JA461, ¶15; JA462, ¶¶16, 17, 18; JA463, ¶¶19, 20, 21, 22, 23 |
| 42 | As he was still the Captain of the ELS, the LCSO did not name an acting Captain. | JA460, ¶10; JA461, ¶15; JA462, ¶¶16, 17, 18; JA463, ¶¶19, 20, 21, 22, 23 |
| 43 | At the LCSO if a position is filled, it is not considered open. | JA460, ¶10; JA461, ¶15; JA462, ¶¶16, 17, 18; JA463, ¶¶19, 20, 21, 22, 23 |
| 44 | If there is an open position because of a retirement, resignation, a promotion, or official transfers, then the Sheriff, in his discretion, may decide to name someone as "acting" in the open position. | JA459, ¶8; JA463, ¶22 |

| **Defendants' Assertion of Undisputed Facts** | **Description** | **Cunningham's Challenge to Assertion of Undisputed Facts with JAReference Incorporating Reference to Record or Affidavit** |
|---|---|---|
| 45 | Being named "acting," while temporary, is an official promotion or change of status. | JA459, ¶8; JA463, ¶22 |
| 46 | At the LCSO when a position is filled, but the person filling the position is unavailable, the position is underfilled. | JA460, ¶10; JA461, ¶15; JA462, ¶¶16, 17, 18; JA463, ¶¶19, 20, 21, 22, 23 |
| 47 | Positions at the LCSO are constantly being underfilled for different reasons, including but not limited to long-term leave of absences, training, special projects, staffing shortages, etc. | JA460, ¶10; JA461, ¶15; JA462, ¶¶16, 17, 18; JA463, ¶¶19, 20, 21, 22, 23 |
| 48 | Ms. Cunningham was not named "Acting Captain" during the period of June 2020 to March 2021 because that Captain position was not an open position. | JA460, ¶10; JA461, ¶15; JA462, ¶¶16, 17, 18; JA463, ¶¶19, 20, 21, 22, 23 |
| 49 | Sheriff Chapman was aware that there were issues between Plaintiff and Captain Gilligan but was unaware of Plaintiff filing any complaints against him. | JA460, ¶12; JA463, ¶23 |
| 50 | On June 6, 2020, Plaintiff told Holway "I'm meeting with att[y] again next week. Im pulling the cord to move forward Done with all this. And I'm 100% not gonna stay and get bullied at ELS so should be interesting to see what they do with me." | JA460, ¶12; JA461, ¶13 |

| Defendants' Assertion of Undisputed Facts | Description | Cunningham's Challenge to Assertion of Undisputed Facts with JAReference Incorporating Reference to Record or Affidavit |
|---|---|---|
| 51 | Plaintiff was aware that Captain Gilligan was moved by June 13, 2023, stating that "Tricarico advised [G]illigan got pulled up to admi[n] to 'help [K]enny.'" | JA461, ¶13 |
| 52 | The management issues with Sgt. Johnson came to a head on June 29, 2020, when he filed an official complaint Plaintiff was subjecting him to a hostile work environment based on his age. | JA463, ¶24 |
| 53 | On July 1, 2020, the LCSO initiated an Internal Affairs investigation into Sgt. Johnson's complaint. | JA463, ¶24 |
| 54 | On July 2, 2020, the LCSO along with the Loudoun County Department of Human Resources began their investigation. | JA463, ¶24 |
| 55 | On July 2, 2020, Plaintiff received an Order of Confidentiality as to the investigation. | JA463, ¶24 |
| 56 | On July 3, 2020, Plaintiff emailed Sgt. Daniel Selby, the Internal Affairs deputy investigating Sgt. Johnson's complaint, providing information about Sgt. Johnson and the management issues with Captain Gilligan. | JA463, ¶24 |
| 57 | Plaintiff was "pissed" about Sgt. Johnson's complaint. | JA463, ¶24 |

| Defendants' Assertion of Undisputed Facts | Description | Cunningham's Challenge to Assertion of Undisputed Facts with JAReference Incorporating Reference to Record or Affidavit |
|---|---|---|
| 58 | On August 6, 2020, another dispute arose between Plaintiff and Captain Gilligan regarding her performance evaluation. | JA461, ¶14 |
| 59 | On August 12, 2020, Plaintiff told Holway that she was "going to drop off my email chain on polands desk. Just gonna write a note that after prugh asked me what I would do if gilligan came back to ELS that they need to know they will have to move me." | JA460, ¶10; JA461, ¶15; JA462, ¶¶16, 17, 18; JA463, ¶¶19, 20, 21, 22, 23 |
| 60 | Sheriff Chapman and Colonel Poland went down to the ELS to discuss the Greg Johnson complaint and her and Captain Gilligan. | JA463, ¶23 |
| 61 | On August 12, 2020, Col. Prugh emailed Major Dondero stating "FYI – dialogue- appearing to be positive- btwn Collete and Tom. Colette and I spoke at length last night COL Polland met with today." | JA463, ¶23 |
| 62 | On August 22, 2020, Plaintiff told Holway "hope they figure out Gilligan is fkn idiot." | JA463, ¶23 |
| 63 | On October 14, 2020, the LCSO exonerated Plaintiff and concluded its investigation of Sgt. Johnson's complaint against her. | JA463, ¶24 |

| Defendants' Assertion of Undisputed Facts | Description | Cunningham's Challenge to Assertion of Undisputed Facts with JAReference Incorporating Reference to Record or Affidavit |
|---|---|---|
| 64 | Plaintiff believes that Sgt. Johnson's complaint was retaliatory against her for being a woman but does not believe that the LCSO's investigation of Sgt. Johnson's complaint was retaliatory. | Undisputed |
| 65 | On November 6, 2020, as part of its investigation into his complaint against Plaintiff, the LCSO determined that Sgt. Johnson had several performance related deficiencies and issued Sgt. Johnson a Letter of Warning. | Undisputed |
| 66 | In early November 2020, First Lieutenants Holway (female), Buckman (male), Earley (male), and Plaintiff discussed new ideas to replace the current duty officer rotation schedule that was implemented in April 2020. | JA459, ¶7; JA463, ¶25; JA464, ¶¶26, 27, 28, 29 |
| 67 | All of the First Lieutenants wanted to move away from the duty officer rotation that was in place and implement a new duty officer schedule that would make their schedules as close to Monday through Friday as possible. | JA463, ¶25; JA464, ¶¶26, 27, 28, 29 |

| Defendants' Assertion of Undisputed Facts | Description | Cunningham's Challenge to Assertion of Undisputed Facts with JAReference Incorporating Reference to Record or Affidavit |
|---|---|---|
| 68 | Command staff above the First Lieutenants liked the duty officer schedule that was implemented in April 2020 because it provided consistency and stability without fewer issues. | JA463, ¶25; JA464, ¶¶26, 27, 28, 29 |
| 69 | During this November 2020 discussions, there was no reference to Plaintiff's circumstances being different than the other First Lieutenants as it related to the duty officer rotation or a Monday through Friday schedule. | JA463, ¶25; JA464, ¶¶26, 27, 28, 29 |
| 70 | In the second half of 2020, First Lieutenant Holway engaged with Major Dondero on different occasions to discuss new ideas to replace the current duty officer rotation that had been implemented in April 2020. | JA463, ¶25; JA464, ¶¶26, 27, 28, 29 |
| 71 | Major Dondero informed Undersheriff Poland about the First Lieutenants concerns with the duty officer rotation schedule. | JA463, ¶25; JA464, ¶¶26, 27, 28, 29 |
| 72 | Undersheriff Poland told Major Dondero that it was a critical role for operations, that command staff would not be getting rid of the role or the non-business hours aspect hours of the role, but that he should be open to suggestions to the role. | JA463, ¶25; JA464, ¶¶26, 27, 28, 29 |

| Defendants' Assertion of Undisputed Facts | Description | Cunningham's Challenge to Assertion of Undisputed Facts with JAReference Incorporating Reference to Record or Affidavit |
|---|---|---|
| 73 | Generally, First Lieutenants have never liked the duty officer role, no matter the specifics of the schedule, because First Lieutenants are typically the only command staff who get assigned non-business hour shifts. | JA463, ¶25; JA464, ¶¶26, 27, 28, 29 |
| 74 | Ms. Cunningham also asked Major Dondero to be removed from duty officer rotation and Major Dondero discussed the possibility with Lt. Col. Prugh. During the June 2020 to the March 2021 timeframe, Plaintiff claims she was denied requests for a Monday through Friday schedule but those requests do not have any dates associated with them. | JA463, ¶25; JA464, ¶¶26, 27, 28, 29 |
| 75 | The First Lieutenants were always able to coordinate and shift schedules to cover duty officer rotation when needed, but it was decided that, at the time, no changes were going to be made to duty officer rotation as a whole and that all four First Lieutenants were going to continue as duty officers. | JA463, ¶25; JA464, ¶¶26, 27, 28, 29 |
| 76 | These four First Lieutenants all served the same duty officer rotation that was implemented in April 2020. | JA459, ¶7; JA463, ¶25; JA464, ¶¶26, 27, 28, 29 |
| 77 | Major Dondero would provide Ms. Cunningham relief when she would ask to leave early or say she needed time off. | JA460, ¶12 |

| Defendants' Assertion of Undisputed Facts | Description | Cunningham's Challenge to Assertion of Undisputed Facts with JAReference Incorporating Reference to Record or Affidavit |
|---|---|---|
| 78 | Eventually, in 2021, the LCSO made changes to the duty officer rotation. | JA464, ¶¶26, 27, 28, 29 |
| 79 | During that timeframe, Major Dondero provided information based on the needs of the specific stations and in conjunction with the current staffing of stations. | JA463, ¶25; JA464, ¶¶26, 27, 28, 29 |
| 80 | Those changes included shifting from having the First Lieutenant from each station serve as duty officer to having only the ELS, Ashburn Station, and Dulles station First Lieutenants serve as duty officer. The WLS First Lieutenant would no longer serve as duty officer rotation. | JA463, ¶25; JA464, ¶¶26, 27, 28, 29 |
| 81 | In December 2020, Captain Gilligan was given a Letter of Warning regarding his actions in management of the relationship between Plaintiff and Sgt. Johnson and the issues with Sgt. Johnson. | JA460, ¶¶11, 12; JA461, ¶13, 14, 15 |
| 82 | The LCSO found that Captain Gilligan and Plaintiff had a "great difficulties working together" and those "difficulties came from the sergeant failing to perform his duties and the lieutenant having expectations that the sergeant could not achieve." | JA460, ¶¶11, 12; JA461, ¶13, 14, 15 |

| Defendants' Assertion of Undisputed Facts | Description | Cunningham's Challenge to Assertion of Undisputed Facts with JAReference Incorporating Reference to Record or Affidavit |
|---|---|---|
| 83 | The LCSO found that Captain Gilligan "should have taken a more active role in finding solutions and working with each person to implement a plan for success." | JA460, ¶¶11, 12; JA461, ¶13, 14, 15 |
| 84 | On March 3, 2021, Sheriff Chapman, noted, in an email, the issues between Plaintiff and Captain Gilligan as a "personality conflict." | JA460, ¶¶11, 12; JA461, ¶13, 14, 15 |
| 85 | Colonel Polland responded to Sheriff Chapman agreeing that the personality conflicts were still an issue between Plaintiff and Captain Gilligan, and that both had numerous personality conflicts with other employees, to include: Mike Bell, Janet Schmidt, Howard Craig, and Tom Alpy, all of whom did not have personality conflicts with anyone else. | JA460, ¶¶11, 12; JA461, ¶13, 14, 15 |
| 86 | On March 4, 2021, Captain Gilligan was officially transferred from the ELS to the Emergency Communications Center, Administrative and Technical Services Division. | JA460, ¶10; JA461, ¶15; JA462, ¶¶16, 17, 18; JA463, ¶¶20, 21, 22 |
| 87 | On February 12, 2021, Plaintiff told Holway "Fuck it. I can leave the job if I need to, but going for discrimination against women." | Undisputed |
| 88 | On March 4, 2021, Captain Greg Ahlemann was transferred from the WLS to the ELS. | Undisputed |

| Defendants' Assertion of Undisputed Facts | Description | Cunningham's Challenge to Assertion of Undisputed Facts with JAReference Incorporating Reference to Record or Affidavit |
|---|---|---|
| 89 | During the March 4, 2021, promotions and transfer cycle, there were no Captain promotions in the operations division. | Undisputed |
| 90 | Plaintiff first engaged with the EEOC in June 2020. | Undisputed |
| 91 | Plaintiff engaged the EEOC at the time because she was having problems with Captain Gilligan as soon as she started working with him. | JA460, ¶¶11, 12; JA461, ¶13, 14, 15 |
| 92 | Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (the "EEOC") on March 18, 2021. | Undisputed |
| 93 | The Charge of Discrimination claims that from when Plaintiff was promoted to First Lieutenant in January 2020 "until June 2020, Captain Gilligan harassed me constantly, warning me to be very careful because my subordinate was keeping a thick file on me" and that she "made several complaints." | JA460, ¶¶11, 12; JA461, ¶13, 14, 15 |

| **Defendants' Assertion of Undisputed Facts** | **Description** | **Cunningham's Challenge to Assertion of Undisputed Facts with JAReference Incorporating Reference to Record or Affidavit** |
|---|---|---|
| 94 | The Charge of Discrimination claims that when Plaintiff was highest ranking deputy in the ELS she "was still on rotating patrol shifts and out of the office 2-3 days a week but was expected to fill the administrative duties of Captain," "was working seven days a week from June-January," and "received overtime pay at a Lieutenants pay grade." | JA464, ¶¶26, 30; JA465, ¶32 |
| 95 | The Charge of Discrimination claims that Plaintiff asked "several times to adjust my schedule to Monday-Friday to facilitate my job duties and was not accommodated." | JA464, ¶26 |
| 96 | The Charge of Discrimination claims that there were eight promotions in February 2021 that were all men. | Undisputed |
| 97 | The Charge of Discrimination claims that when Captain Alhmen was transferred from the WLS to the ELS that the First Lieutenant at the WLS was afforded a Monday-Friday Schedule. | JA464, ¶¶28, 29 |
| 98 | When asked what she was claiming to be retaliated for, Plaintiff responded "for my complaint against – to the EEOC." | Undisputed |
| 99 | When asked if she was aware of any retaliation before she made the EEOC complaint, she responded "not that I am aware of." | Undisputed |

| Defendants' Assertion of Undisputed Facts | Description | Cunningham's Challenge to Assertion of Undisputed Facts with JAReference Incorporating Reference to Record or Affidavit |
|---|---|---|
| 100 | From June 2020 through March 2021, Plaintiff remained a First Lieutenant, was paid as a First Lieutenant, and was eligible for overtime pay. | Undisputed |
| 101 | In 2020, Plaintiff's W2 wages were $123,220.87. | JA464, ¶¶30, 31; JA465, ¶32 |
| 102 | In 2020, there were seven individuals that held the rank of Captain in the operations division for the full year: Captain Ahlemann's 2020 W2 wages were $118,923.60; Captain DeLitta's 2020 W2 wages were $123,5528.45; Captain Gilligan's W2 wages were $126,539.57; Captain Hibberd's W2 wages were $134,347.05; Captain McDonald's W2 wages were $123,361.67; Captain Schleiden's W2 wages were $131,938.51. | Undisputed |

A statement of alleged fact by the Defendants is not undisputed if the context and/or elaboration of the fact supports a basis for liability. There is a dispute as to whether the nature of Cunningham's complaints, the LCSO response with respect to removing Gilligan, whether Cunningham was acting as the ELS Station Commander, whether Gilligan remained as the ELS Station Commander, whether

Cunningham was paid less based on her hourly rate of pay, and whether the refusal to remove her from the duty officer status was retaliatory given that another male First Lieutenant was removed from the duty officer rotation when there was no Captain for his station shortly after a new Captain was assigned to the ELS. Given these disputes, the District Court erred in granting summary judgment.

Upon *de novo* review, Cunningham properly responded in the motion and identified the alleged undisputed facts for which she claimed there was a dispute. These facts are material to her claims of discrimination and under the standards applicable to a summary judgement motion, the Defendants' motion should have been denied and the dispute presented to a jury for determination of the facts.

The disputed facts are not immaterial as they address the credibility of the LCSO and establish essential facts relating to Cunningham's claim of discriminatory treatment. Because she claims that she was in a similar position as three other males, performing the same job, and not receiving the same title or pay, whether she held the position or Gilligan held the position is material to her case. The dispute

relating to this fact, if it can be considered despite not being timely disclosed by the Defendants, is for a jury to decide.

### C. Cunningham Identified Proper Comparators

With regard to the issue of comparators, the district court determined that neither the First Lieutenants or the Station Commanders were proper comparators but did not provide any reason for its conclusion. This however, does not support the Defendants' assertion that Cunningham did not show applicable comparators.

This Court should be guided by the District Court opinion in *Blagmon v. Hanover County*, 2025 U.S. Dist. LEXIS 113253 *, decided in June 2025

Blagmon is an African-American man who alleged that he was denied receiving "acting pay" because of his race.

Title VII prohibits unlawful discrimination in the employment context, which includes discrimination based on sex. *Wannamaker-Amos v. Purem Novi, Inc.*, 126 F.4th 244, 254-55 (4th Cir. 2025); see 42 U.S.C. § 2000e-2(a). A plaintiff may prove discrimination under Title VII through either "(1) direct evidence of discrimination, or (2) through the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*,

411 U.S. 792, (1973), and its progeny." *Wannamaker-Amos*, 126 F.4th at 255 (citing *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 223 (4th Cir. 2019)). "It is left to the plaintiff's discretion whether to proceed by direct and indirect[, i.e., circumstantial,] evidence or by means of the *McDonnell Douglas* burden-shifting framework." *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 249 (4th Cir. 2015).

Under the *McDonnell Douglas* framework, a plaintiff must first establish a *prima facie* case of discrimination. *Wannamaker-Amos*, 126 F.4th at 255. "In pay-disparity cases, the prima facie case requires a plaintiff to establish that (1) she is a member of a protected class, (2) she was performing her job satisfactorily, (3) an adverse employment action occurred, and (4) the circumstances suggest an unlawfully discriminatory motive.'" *Noonan v. Consol. Shoe Co., Inc.*, 84 F.4th 566, 572 (4th Cir. 2023). In this case, there is no real dispute as to the first three elements.

"Typically, . . . the circumstance that 'suggest[s] an unlawfully discriminatory motive' is the existence of a . . . comparator." *Id.* In the summary judgment context, a plaintiff is required to "point to 'evidence on which a jury could reasonably find for' her," on each of these *prima facie* elements. *Id.* The burden of production then shifts to the defendant

to present evidence "to articulate a legitimate, non-discriminatory justification for its allegedly discriminatory action." *Wannamaker-Amos*, 126 F.4th at 255. Assuming that the defendant can meet its burden, the plaintiff must then "prove by a preponderance of the evidence that the neutral reasons offered by the employer 'were not its true reasons, but were a pretext for discrimination.'" *Id.* (quoting *Tex. Dep't. of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981)).

Notwithstanding the intricacies of the *McDonnell Douglas* framework, "the core of every Title VII case remains the same, necessitating resolution of 'the ultimate question of discrimination.'" *Id.* "Courts must therefore 'resist the temptation to become so entwined in the intricacies of the [*McDonnell Douglas*] proof scheme that they forget that the scheme exists solely to facilitate determination' of the ultimate question of discrimination." *Id.* (alteration in original).

Defendants primarily argue that Cunningham has not established the fourth *McDonnell Douglas* element, alleging that she has not produced evidence upon which a jury could reasonably find that she was similarly situated to her male counterparts who were not likewise "prevented" from receiving the title of Station Commander and the rank

and pay associated with the position. Defendants argue that the evidence and circumstances do not suggest that the LCSO acted based on an unlawful discriminatory motive. The record does not support the Defendants' position.

Whether a plaintiff is similarly situated to a comparator is typically "a fact question," so long as a court finds, as a matter of law, that there is a sufficient "basis for comparison to submit to the fact finder." *Tinsley v. City of Charlotte*, 854 F. App'x 495, 501 (4th Cir. 2021). A comparison between employees "will never involve precisely the same set of work-related offenses occurring over the same period of time and under the same set of circumstances." *Cowgill v. First Data Techs., Inc.*, 41 F.4th 370, 381-83 (4th Cir. 2022). As noted by the District Judge in *Blagmon*, "There is "no bright-line rule for what makes two jobs 'similar' under Title VII... however, courts generally consider "whether a plaintiff and comparator 'dealt with the same supervisor, [were] subject to the same standards and[,] . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Id.* quoting *Spencer v. Va. State Univ.*, 919 F.3d 199, 207 (4th Cir. 2019) (instructing that

courts should consider the above-listed factors, as well as whether the employees "had comparable experience, education, and other qualifications—provided the employer considered these latter factors in making the personnel decision"). *Blagmon*, at *18 (internal cites omitted).

Here, Cunningham identifies three male as comparators. All three were employed by the LCSO as Station Commanders and received pay for that position, the title of Captain, and had certain work perks such as administrative support and not being required to participate in the duty rotation. Cunningham was in command of the largest Loudoun County station. There are only four stations and Cunningham was the only one of the station commanders that was not male, not at the rank of Captain, not paid as a Captain, and who was required to participate in the duty rotation and to receive overtime. They all had the same supervisor, Major Dondero.

Defendants argue that Cunningham and male Station Commanders were not similarly situated because they did not have the same rank, similar to the arguments made by the Defendants in *Blagmon*, 2025 U.S. Dist. LEXIS 113253, at * 19. Ultimately, the District

Court in *Blagmon* found that the Blagmon met the requirements of identifying similarly situated comparators because they engaged in the same material conduct.

The District Court noted Blagmon's argument that: "The inference to be drawn from this evidence is, presumably, that because a lieutenant otherwise filled the role occupied by Plaintiff, Plaintiff was performing lieutenant-level duties." *Id*. at *25. Similarly, Cunningham asserts that because a Captain otherwise filled the role occupied by Cunningham, Cunningham was performing Captain-like duties.

The District Judge in *Blagmon* focused on the conduct and job requirements of the comparators, not their rank. This is appropriate, else an employer could always avoid Title VII liability by simply refusing to promote.

Under the *McDonnell-Douglas* framework, summary judgment should have been denied on the issue of appropriate comparators. The Court is not permitted to engage in weighing the evidence at this stage. *See Alexander v. Connor*, 105 F.4th 174, 178 (4th Cir. 2024) (at the summary judgment posture, once the non-moving party who would bear the burden of proof at trial produces "evidence that could—if believed—

permit a reasonable factfinder to rule in their favor[,] . . . the court must decide a summary judgment motion on the assumption that the factfinder would believe that evidence and credit it over any contrary evidence offered by the moving party." (emphasis added) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986))). Rather, the question is whether Cunningham has established a sufficient basis for comparison to allow the Court to submit to the jury the final question of whether she and her comparators are similarly situated. *Tinsley*, 854 F. App'x at 501; cf. *Polak v. Va. Dep't of Env't Quality*, 57 F.4th 426, 429-32 (4th Cir. 2023) (recognizing that whether someone is an adequate comparator is a question of fact for the jury but affirming grant of summary judgment for the defendant because the plaintiff failed to present sufficient evidence to create that question of fact).

Viewing the evidence in the light most favorable to Plaintiff and drawing all reasonable inferences therefrom, this Court should find that Cunningham has established a sufficient basis for comparison to create a jury question as to whether she and her comparators were similarly situated.

### D. The Appellees Have Failed to Identify Legitimate, Non-Discriminatory Reasons for Adverse Employment Action

The Appellees' position is not assisted if one pursues the *McDonnell Douglas* framework further. At the second *McDonnell Douglas* step, "the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 214 (4th Cir. 2007). The employer's burden at this stage "is one of production, not persuasion; it can involve no credibility assessment." *Reeves*, 530 U.S. at 142 (internal citation omitted). Once "an employer articulates a reason for discharging the plaintiff not forbidden by law," the Court does not evaluate "whether the reason was wise, fair, or even correct." *Villa v. CavaMezze Grill, LLC*, 858 F.3d 896, 901 (4th Cir. 2017) (internal quotations omitted).

Whether the Appellees meet this burden is dependent on whether the affidavits of Dondero and Poland are admissible despite the evidence contained there not being disclosed pursuant to Rule 26. If the Court finds that the material was not disclosed, the Appellees have alleged no other non-discriminatory justification for Cunningham's treatment. Otherwise, the allegation is that there was no position to promote her to as Gilligan was never removed from the position as Station Commander of ELS.

Even assuming, without conceding, that the Appellees meet the requirements of this second part of the *McDonnel Douglas* framework, summary judgment was improper because Cunningham provided sufficient evidence for a jury to find that the LCSO reasons are a pretext for discrimination.

The burden thus returns to Plaintiff to "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons but were pretext for discrimination." *Holland*, 487 F.3d at 214. Pretext can be established by "offering evidence that the employer's justification is 'unworthy of credence,'" *Wannamaker-Amo*, 126 F. 4th at 257. If a plaintiff establishes that an employer's justification is "unworthy of credence," then "discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision." *Id.* If a plaintiff demonstrates evidence of pretext…then the "case must be decided by a trier of fact and cannot be resolved on summary judgment." *Id.*

In this case, Cunningham established that the LCSO's justification is unworthy of credence given the inconsistent statements of the Sheriff and the office regarding Gilligan's position. The Sheriff should be

judicially estopped from asserting a position different from the one he asserted when responding to the EEOC. JA499, JA501, JA502, JA503.

As in *Blagmon*, the Appellees provide inconsistent justifications for its actions, 2025 U.S. Dist. LEXIS 113253 *34. At all times prior to the motion for summary judgment being filed, Gilligan had been removed from ELS and removed as Cunningham's direct supervisor. That removal created the vacancy for which she was tasked to fill but not be compensated in pay or rank or duty schedule as similarly situated men. The Appellees' position changed to argue that Cunningham's promotion was not legally possible. "[W]hen a company changes its story after it cannot support its initial story, there is an obvious issue of pretext." *Holland*, 487 F. 3d at 217; *see also Wannamaker-Amos*, 126 F.4th at 258 (the fact that an employer "has offered different justifications at different times . . . is, in and of itself, probative of pretext"). Thus, because of the changing explanations encompassed by the record, a reasonable jury could find, by a preponderance of the evidence, that the Appellees' stated reasons are pretext. *Wannamaker-Amos*, 126 F.4th at 258. Thus, this issue should be decided by a jury.

Further, the change in policy for First Lieutenants participating in the duty rotation when they were running a station was inconsistently applied and only negatively applied against Cunningham who was the only female to which the circumstances were applicable.

A jury could alternatively find that the Appellees' purported legitimate, nondiscriminatory reason for not offering Cunningham the opportunity to be removed from the duty rotation was pretext because Cunningham has offered evidence to show that even if there was a basis for the policy or its change, the Appellees inconsistently applied it to Cunningham—a woman—relative to male First Lieutenants acting as stations commanders. Cunningham has specifically pointed to another male First Lieutenant—acting as the commander of the Western Loudoun Station—who did receive the benefit of no overtime or duty rotations schedules. This fact, when viewed in the light most favorable to Cunningham, could support a finding that Appellees were not as constrained by its policy as it would have Cunningham and the Court believe. Thus, based on the evidence presented, a jury could reasonably find that Appellees' policy-based explanation was mere pretext.

## CONCLUSION

WHERFORE Cunningham prays that this Court reject the arguments of the Appellees and reverse the District Court and grant her the ability to present her case to a jury. She has properly set forth a claim for which disputed facts do not render the matter eligible for summary judgment and she has properly set forth the requirements of establishing disparate treatment based on her sex.

Respectfully Submitted,
COLETTE CUNNINGHAM
By Counsel

WESTLAKE LEGAL GROUP

/s/ Thomas K. Plofchan, Jr.
Thomas K. Plofchan, Jr., VSB No. 34536
46175 Westlake Drive, Suite 320
Potomac Falls, Virginia 20165
(703) 406-7616 – Telephone
(703) 444-9498 – Facsimile
tplofchan@westlakelegal.com
*Counsel for Plaintiff/Appellant*

## REQUEST FOR ORAL ARGUMENT

Appellant desires to state, in person, the reasons her appeal should be granted.

## CERTIFICATE OF SERVICE

I certify that on this 19th day of September, 2025 I served a copy of the foregoing Brief of Appellant upon the following via the CM/ECF system to:

Alexander Francuzenko, VSB# 36510
Cook Craig & Francuzenko, PLLC
3050 Chain Bridge Road, Suite 200
Fairfax, VA 22030
(703) 865-7480 – Telephone
(703) 434-3510 – Facsimile
Email: alex@cookcraig.com
*Counsel for Defendants/Appellees*

/s/ Thomas K. Plofchan, Jr.
Thomas K. Plofchan, Jr.

**UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT**

**No.** 25-1271 **Caption:** Colette Cunningham v. Loudoun County Sheriif's Office

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**

Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

**Type-Volume Limit for Briefs if Produced Using a Computer:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 15,300 words or 1,500 lines. A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type. See Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

**Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words. Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2) & 40(d)(3).

**Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6). Sans-serif type, such as Arial, may not be used except in captions and headings.

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

☑ this brief or other document contains 6484 [*state number of*] words

☐ this brief uses monospaced type and contains ____________ [*state number of*] lines

This brief or other document complies with the typeface and type style requirements because:

☑ this brief or other document has been prepared in a proportionally spaced typeface using
Microsoft Word [*identify word processing program*] in
14, Century Schoolbook [*identify font, size, and type style*];

**or**

☐ this brief or other document has been prepared in a monospaced typeface using
____________________ [*identify word processing program*] in
____________________ [*identify font, size, and type style*].

**NOTE: The Court's preferred typefaces are Times New Roman, Century Schoolbook, and Georgia. The Court discourages the use of Garamond.**

(s) Thomas K. Plofchan, Jr.

Party Name Colette Cunningham Date: 9/19/2025